Chief Judge Fuld.
On September 29, 1967, Marcos Morales was stabbed to death and robbed in the vicinity of Malta Street in Brooklyn. Tried and convicted of the crime was the defendant, Steven Townsend, at the time a 17-year-old high school student living at home with his parents. The question on this appeal is whether a new trial must be ordered on the ground that his written confession to the police was obtained under circumstances which precluded its introduction in evidence against him.[1]
The facts are briefly stated. At about 7:00 p.m. on the day following the crime, Townsend, who, as indicated, was at the time a high school student residing with his parents, voluntarily and unaccompanied, walked into the 75th precinct station house in Brooklyn and took a seat in the “ waiting room.” It is not clear exactly what prompted him to go there. The People’s version is that Townsend had learned that police officers had been making inquiries in the neighborhood about him and that they wanted to speak to him. At the Huntley hearing, Townsend explained that he had heard that his friend Horace Hudson was being detained at the station and that at the request of the latter’s brother he went there to see what it was all about. In any event, during the course of an interrogation which began at about 9:00 p.m. that night, September 30, and continued to around 3:00 a.m. on October 1, it appeared that Townsend made four incriminating statements — three orally to police detectives and one, reduced to writing, to an assistant district attorney.[2]
While the police were questioning the defendant — in fact from about 8:30 p.m., before the interrogation had actually begun— his mother, as the court at the Huntley hearing found, repeatedly telephoned the 75th precinct to determine if her son was there and on each occasion she was told by the desk officer that *40 he was not.[3] She “kept calling and calling,” she testified, to ask “if they [the police] had someone there by the name of Steven Townsend ’ ’ and the response she invariably received was “no.” Her testimony as to this is uncontradicted; indeed, neither at the Huntley hearing nor at the trial was the officer at the desk on the evening in question called to the stand. At about 2:30 a.m.— almost five hours after this questioning had begun — during which, as already noted (n. 2), he was never once properly given his fourfold Miranda warnings — an assistant district attorney arrived on the scene and secured a written confession. Although this inculpatory statement was eoncededly preceded by all the admonitions constitutionally required under Miranda, it, too, was sought to be suppressed at the Huntley hearing on the ground that it was “ poisoned ” by the illicitly obtained statements. A half hour later, however, for the first time, the police telephoned Mrs. Townsend and informed her that her son was at the police station, ‘ ‘ under arrest and charged with homicide.”
Some seven months thereafter, in March, 1968, the defendant, along with two other youths, was indicted for murder.[4] As already noted, the court, at the pretrial Huntley hearing, held the defendant’s three oral statements inadmissible. It did, though, find the written confession to the prosecutor admissible, rejecting the contention that it was “ poisoned ” by the earlier statements. Addressing himself to the fact that the defendant’s mother had, throughout the interrogation, attempted to determine if the police were holding her son, the trial judge stated that, if the desk officer deliberately lied to the defendant’s mother, such tactic was to be “deplored.” He concluded, however— citing this court’s decisions in People v. Hocking (15 N Y 2d 973) and People v. Taylor (16 N Y 2d 1038) — that “ [r] equests by the *41 family are not deemed requests for counsel such as would command a halt to interrogation. ’ ’
At the trial, the evidence against the defendant consisted of his written confession to the district attorney, as well as the inculpatory statements — referred to above (p. 39, n. 1) — made to his friend, Horace Hudson. The defendant did not take the stand in his defense. The jury returned a verdict of guilty and, thereafter, the defendant was sentenced to a term of imprisonment of from 15 years to life.
The Appellate Division, by a closely divided vote, affirmed the resulting judgment of conviction, without opinion (36 A D 2d 749), citing our decision in People v. Stephen J. B, (23 N Y 2d 611). In an opinion in which Justice Christ concurred, Justice Hopkins voted to reverse the conviction and to order a new trial on the ground that the circumstances under which the police procured the written statement from the defendant, “ viewed as a whole deprived [him] of the fundamental safeguards of due process # * * which precluded] the use of the written statement against him ” (36 A D 2d, at p. 750).
There should be a reversal; it is impermissible for the police to use a confession, even if it be otherwise voluntary, obtained from a 17-year-old defendant when, in the course of extracting such confession, they have sealed off the most likely avenue by which the assistance of counsel may reach him by means of deception and trickery. This conclusion is reinforced by the fact that confession followed upon the heels of three inadmissible statements and was the product of a continuous stream of interrogation and that, during all this, the defendant’s mother was desperately trying to get in touch with her son. Whether or not she actually would have retained counsel had she been informed that her son was being interrogated at the police station, and thereby assured the defendant the protection of counsel and a consequent cessation of questioning mandated by our decisions beginning with People v. Donovan (13 N Y 2d 148) and People v. Gunner (15 N Y 2d 226) is beside the point. Speculation on that score ended, as the dissenters below made clear, when the police by illegal tactics rendered it a certainty that counsel would not be obtained by any outside source. (Cf. People v. Ressler, 17 N Y 2d 174, 178, affg. 24 A D 2d 7.) It follows, therefore, that reliance upon the Hocking (15 N Y 2d *42 973, supra) and Taylor (16 N Y 2d 1038, supra) decisions is misplaced.
All that we held in Hocking and Taylor was that a refusal by the police to allow a parent to see his child did not amount to a denial of counsel so as to render any subsequently obtained confession per se inadmissible. However, in those cases, unlike the present one, to cull again from the dissenting opinion below, ‘[1] the family knew where the defendant was being held by the police and took no further steps beyond the request to see him. No attempt was made by the police to conceal the presence of the defendant or to deceive the family when inquiry was made ” (36 A D 2d, at p. 750). What the police did here was indefensible. The courts should not accept a confession obtained by the police through tactics calculated to. make certain that the defendant’s parents will not take any steps to get him' a lawyer.[5]
There should, therefore, be a new trial. Upon such trial, the People are entitled to use the statements which the defendant made to his friend Hudson as evidence of his guilt. However, as indicated, his written statement to the district attorney must be excluded.
The order appealed from should be reversed and a new trial ordered.
Judges Burke, Breitel, Jason, G-abrielli, Jones and Wachtler concur.
Order reversed, etc.

. Also used against the defendant were inculpatory statements made to a friend, Horace Hudson. The admissibility of those statements is not in issue.

. It was subsequently determined at the Huntley hearing that the police officers had failed properly to advise the defendant of his rights under Miranda v. Arizona (384 U. S. 436) and, accordingly, the statements made to them were suppressed.

. Mrs. Townsend was prompted to phone because she had been told by her landlord, Mrs. Gilchrist — who had earlier in the evening been summoned, without explanation, to the police station to identify the Townsend youth — that he was there. Mrs. Townsend, we note, was actually present when the police arrived to take Mrs. Gilchrist to the station. But, as indicated, they refused to tell either woman why they wanted Mrs. Gilchrist to accompany them. “ Just come with me,” one of them said, “We got a call to bring you down.”

. The two codefendants pleaded guilty to manslaughter and are not parties to this appeal.

. In this view, it is unnecessary to consider the defendant’s further arguments whether the People established the voluntariness of his written confession beyond a reasonable doubt. It is enough" to note that the facts of this case plainly distinguish it from People v. Stephen J. B. (23 N Y 2d 611, supra).