THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CONRAD TALAMO, Appellant.

Third Department, February 10, 1977

*Putziger & Warder (Walter H. Putziger* of counsel), for appellant.

*D. Bruce Crew, III, District Attorney (Peter Buckley* of counsel), for respondent.

MAHONEY, J. Defendant on appeal contends that his pretrial motion to suppress certain inculpatory statements and his motion to exclude from impeachment use his three prior convictions should have been granted.

At the *Huntley* hearing it was established that defendant

was arrested at about 10:30 P.M., July 21, and taken to the Horseheads police station. After being told his *Miranda* rights, he was first questioned by a Sergeant Waters for some 20 minutes, and then, beginning at midnight, by Patrolman Rogers for two and one-half to three hours. The first oral inculpatory statement in issue was made, according to Rogers, at about 3:00 A.M. No one was present other than Rogers and the defendant.

The defendant testified that he asked Sergeant Waters for permission to phone his attorney but it was denied. Waters did not testify at the hearing, and Officer Rogers did not contradict the allegation since he was not present when the defendant and Waters talked. Nevertheless, the trial court found that no request to call an attorney was made. If the defendant was in fact denied the right to phone his attorney, the admissions obtained in the subsequent stationhouse questioning, no matter how amiable, must be suppressed *(People v Paulin,* 33 AD2d 105, 110, affd 25 NY2d 445). But, it is not necessary to reject the trial court's factual findings in order to conclude the statement must be suppressed. Officer Rogers admitted, and the trial court found, that before the statement was made the defendant asked "five or six times" to phone his family but no call was permitted. Denying the request of a suspect undergoing custodial interrogation to phone his family makes inadmissible a subsequent confession (cf. *People v Townsend,* 33 NY2d 37). Although the case at bar is different from *Townsend* in that here it was the defendant who attempted to contact his family rather than the family him, the essential point is the same, i.e., the police "sealed off the most likely avenue by which the assistance of counsel may reach him". *(People v Townsend, supra,* p 41.) Thus, the statements made on the early morning of July 22 must be suppressed. However, it does not necessarily follow that the inculpatory statement made on the evening of the 22d must also be suppressed *(People v Tanner,* 30 NY2d 102; *People v Stephen J. B.,* 23 NY2d 611).

After arraignment on the 22d, the defendant returned to jail where he sought out Officer Rogers. Rogers contends the defendant made further admissions in the conversation that followed, while defendant insists he merely asked the officer where to obtain help for drug abuse. Whatever he said to the officer, it was clearly not the result of interrogation but rather a spontaneous utterance. Its substance could properly be

admitted against defendant *(People v Kaye,* 25 NY2d 139. Cf. *People v McKie,* 25 NY2d 19), unless the improperly-obtained statements of that morning tainted this later statement.

In this case, the only tainting effect the first confession had on the second was the so-called "cat out of the bag" effect. This figure of speech was first enunciated in *United States v Bayer* (331 US 532) as a standard in refusing to suppress confessions merely because the defendant may have been psychologically demoralized by a prior inculpatory statement. The subsequent statement is admissible if, at the time it was made it can fairly be said, as here, that while the defendant may have still been depressed because of his original confession, he was, nevertheless, free of the coercive effects that induced the first statement. This rule has been adopted in New York (cf. *Matter of Emilio M.,* 37 NY2d 173; *People v Tanner, supra; People v Stephen J. B., supra).*

Recently, in *People v Chapple* (38 NY2d 112) the Court of Appeals suppressed subsequent inculpatory statements, made after *Miranda* warnings were given, because the physically intimidating circumstances which induced the original inadmissible confession had a residual coercive effect on the second statement. (See, also, *Darwin v Connecticut,* 391 US 346; *Clewis v Texas,* 386 US 707.) Such is not the case herein. Although, because of the denial of access to family, the first interrogation was improper, the defendant himself concedes it was amiable. Moreover, the subsequent statement was made in the course of a conversation initiated by the defendant, not the policeman. The only taint possible from the first confession was the revealed secret effect, which alone is insufficient to suppress *(United States v Bayer, supra.* See, also, *United States v Toral,* 536 F2d 893, 896-897; *Knott v Howard,* 511 F2d 1060).

Defendant moved to preclude from impeachment use his three prior convictions, petit larceny (1973), third degree grand larceny (1973), and criminal sale of a controlled substance (marijuana) in the sixth degree (1974). The trial court permitted use of the larceny convictions, but not the marijuana conviction. Defendant contends that under the principles of *People v Sandoval* (34 NY2d 371) the larcenies were so similar to the crime charged that revealing them to the jury would cause unjustifiable prejudice.

Although prior larcenies similar to the crime charged may be interpreted by the jury as proof of the defendant's propen-

sity to commit the crime charged, willingness to steal has also been specifically recognized as "very material" proof of lack of credibility *(People v Sandoval, supra).* To balance these opposing factors is difficult, and should generally be left to the trial court *(People v Duffy,* 36 NY2d 258, 262-263). In *Duffy* the prior bad act was heroin addiction. It must have had a dramatic prejudicial effect on the jury since it provided a strong motive for the crime charged, robbery. The larcenies in the case at bar are as relevant to credibility and no more prejudicial than the prior heroin addiction which the Court of Appeals in *Duffy* held it was in the discretion of the trial court to admit.

It is not possible to determine if the error in admitting in evidence defendant's first confession was harmless since the parties present this appeal on the *Huntley* transcript only. The Chemung County Clerk is directed to file a full trial transcript pursuant to the rules of this court and the parties are requested to submit supplemental briefs solely on the question of harmless error.

The determination should be withheld pending compliance with the above directions.

KANE, J. (dissenting). The defendant, then 20 years of age, admitted at the *Huntley* hearing that he had been given the preinterrogation *Miranda* warnings by Sergeant Waters and Officer Rogers and that he was familiar with his rights owing to prior arrests wherein those same warnings had also been announced. He denied making any inculpatory statement to Rogers during either of their encounters, but insisted that he had repeatedly asked both policemen to allow him to contact his attorney as well as his family. In deciding that his constitutional rights had not been infringed, the trial court impliedly found that defendant had not requested the assistance of counsel and, inasmuch as his credibility was a matter for it to resolve, I perceive no reason to disturb that finding.

Turning to defendant's conceded requests to speak to family members, I am unable to accept the proposition broadly stated by the majority that the denial thereof rendered any subsequent confession inadmissible. In *People v Townsend* (33 NY2d 37), the 17-year-old defendant was interrogated for nearly five hours *without* the benefit of *Miranda* admonitions, and while his mother was desperately trying to locate him, before he made certain oral admissions. It is not surprising, therefore, that the Court of Appeals suppressed his later

written confession, made after he first received proper warnings, because the conduct of the police had effectively sealed him off from receiving the assistance of counsel *(People v Townsend, supra,* p 41). However, the decision carefully distinguished and reaffirmed the principle of earlier cases that the refusal of the police to allow a parent to see his child during custodial interrogation did not automatically render a subsequent confession inadmissible per se *(id.,* p 42). Here, we are not presented with the case of an uninformed youth, whose family was deceived in any way, but with a defendant who knew his rights and chose not to contact an attorney despite a concurrent inability to reach his family. Under these circumstances, that inability should undoubtedly be considered as a factor in assessing the voluntariness of his waiver of the right to counsel, but it should not, in my opinion, conclude the question. The trial court has resolved this issue against the defendant and, again, I discover nothing in the record to warrant any disagreement with its findings.

Having decided that defendant's first statement was not improperly obtained, it is unnecessary for me to consider whether his post-arraignment admission to Officer Rogers was "poisoned" by his earlier revelations. However, I believe that this second conversation was independently admissible as a spontaneously volunteered account and was not the product of an interrogation or interview *(People v Kaye,* 25 NY2d 139; cf. *People v Townes,* 41 NY2d 97; *People v Hobson,* 39 NY2d 479). Since I concur with the majority's views concerning the impeachment value of defendant's prior convictions, and since the defendant has otherwise limited his appeal to matters which do not merit reversal, the judgment should be affirmed.

SWEENEY, J. P., MAIN and LARKIN, JJ., concur with MAHONEY, J.; KANE, J., dissents and votes to affirm in an opinion.

Determination withheld for further proceedings not inconsistent with this opinion.