OPINION OF THE COURT
Chief Judge Breitel.
Defendant appeals from the Appellate Division’s unanimous affirmance of his conviction, after jury trial, on two counts of murder and various lesser offenses in connection with the robbery and shooting death of a liquor store owner.
The issue is whether, viewed as a whole, improper police behavior requires suppression of defendant’s oral confession. The questionable behavior falls into two categories. First, despite requests by defendant, who was 18 years old, the police did not, until after the confession, notify defendant’s mother of his arrest. Second, defendant was moved from one police station to another, and when his lawyer finally arrived, after the defendant had already given his oral confession, defendant’s location was concealed from the lawyer.
The order of the Appellate Division should be reversed and a new trial ordered. The police conduct isolated defendant from two of his most likely avenues of assistance, his mother and his lawyer. The net effect was to preclude the possibility, even likelihood, that defendant would procure legal advice before submitting to police questioning and, ultimately, confessing to the crime. Under these circumstances, defendant was denied his constitutionally guaranteed right to counsel. His confession should have been suppressed, and his conviction must, therefore, be reversed.
On June 3, 1974, in the Town of Greenburgh, Ruggiero, a liquor store owner who lived across the street from defendant Bevilacqua, was shot through the back of the head, to be found dead in his automobile two days later. The evidence at trial indicates, overwhelmingly, that defendant, together with Michael and Robert Gardella and Richard Harris, had plotted to rob Ruggiero of a briefcase they believed contained a large amount of money. Ultimately, the victim Ruggiero was coaxed into driving defendant and Michael Gardella home. When the victim took the wheel with Bevilacqua beside him, Gardella, sitting in the back seat, shot and killed him.
The salient facts described below are based on the thorough *512 and detailed opinion and formal findings of fact of the Judge who conducted the pretrial suppression hearing.
Defendant was not arrested until 11 days later, when Town of Greenburgh and City of White Plains police apprehended him in White Plains. The Gardella brothers were arrested the same evening, presumably also by the Greenburgh and White Plains police. Yet, none of the defendants was taken directly to the Greenburgh police station. Instead, Bevilacqua was taken to the Elmsford station, and the Gardella brothers were taken to Tarrytown, allegedly because of the lack of "processing” facilities in Greenburgh. Only much later were the suspects transported to Greenburgh.
On the way to Elmsford, following his arrest at 7:15 p.m., Bevilacqua was advised of his constitutional preinterrogation rights. He did not insist on having a lawyer present, but did ask to see his mother. At 8:30 p.m., having been at the police station for nearly an hour, defendant again asked the police to telephone his mother. The request was apparently ignored. Instead, the police began questioning defendant, perhaps waving purported inculpatory statements by other witnesses and perhaps, according to defendant, threatening the use of physical force. It is conceded that no physical force was actually used. By 9:30 p.m., defendant began to give the police an oral confession, which was completed between 10:00 and 10:15 p.m. Later, a written statement was prepared, and defendant signed it at 11:15 p.m. After this statement had been signed and verified before a notary, defendant’s parents were finally telephoned. At around midnight, defendant was taken to Greenburgh police headquarters.
Meanwhile, at around 7:00 p.m., the lawyers representing the Gardella brothers were notified of their arrest. For the next two hours there was shuttling between the White Plains and Greenburgh police headquarters in an effort to locate the clients. After they were eventually located at the Greenburgh station, one of the lawyers called Michael Russo, Bevilacqua’s lawyer in other matters, to apprise him of Bevilacqua’s arrest. Russo received the message, and between 10:15 and 10:30 left instructions at the Greenburgh station that Bevilacqua was not to be interrogated until he arrived. Upon Russo’s arrival at the Greenburgh station at 11:00, the lawyer was told that Bevilacqua was being processed, and that he would have to wait. He was not informed that Bevilacqua had not yet arrived at Greenburgh, but was still in Elmsford. Despite *513 repeated requests, not until 12:37 a.m. was Russo finally permitted to consult with his client.
At the pretrial suppression hearing, defendant’s written confession was suppressed because it had been given after the police had deliberately concealed defendant’s location from his lawyer and refused the lawyer access to his client (see People v Donovan, 13 NY2d 148, 151). The oral confession, however, was not suppressed. At his trial, which had been severed from those of the other perpetrators, defendant was convicted on all counts. He was sentenced from 25 years to life imprisonment on the two murder counts, and to lesser terms on the other counts. The Appellate Division unanimously affirmed.
It is true, of course, that the right to counsel, like most other constitutional rights, may be waived. But unless the right is "waived” under circumstances evincing a conscious and voluntary act, it will not be effective, since laymen, even laymen with experience in the criminal law, are not likely to know precisely what rights are being waived (see People v Hobson, 39 NY2d 479, 484-485). Hence, the courts must be careful in evaluating purported waivers of the right to counsel before a lawyer enters the proceeding.
It was found as a fact at the pretrial hearing that when Bevilacqua was first apprehended, he waived his right to a lawyer, but asked to see his mother. As previously noted, defendant was 18 years old at the time. It was only natural that he should regard his mother, rather than a lawyer, as a primary source of help and advice. He might have expected his mother to call his lawyer; he might not have. The point is that by not telephoning his mother, despite an at least once repeated request, until after Bevilacqua had been interrogated and had confessed, the police foreclosed the possibility, and even the likelihood, that he would receive adequate counsel before responding to police questioning.
In this respect, the case is not unlike People v Townsend (33 NY2d 37). There, the mother of a 17-year-old defendant tried repeatedly to reach her son while he was in custody. Each of her telephone calls, however, was met with police denials that the boy was in custody, while, in fact, he was not only in custody, but confessing to the crime. This deception and trickery was condemned by this court in reversing the conviction (id., pp 39-42).
The analogy to the Townsend case is not, of course, perfect. In Townsend, the defendant was a legal minor; in this case, he *514 is not. In Townsend, the police deliberately lied to the mother; in this case their wrong was one of omission in ignoring defendant’s requests to speak with his mother. In the Townsend case, defendant was never properly given preinterrogation warnings; in this case the warnings were given and Bevilacqua waived his right to counsel. These distinctions might, in another case, require or permit a different result, but in this case other police misconduct, seemingly planned and deliberate, compounded the error of not promptly telephoning defendant’s mother.
When defendant’s lawyer, Russo, first learned of defendant’s arrest and telephoned the Greenburgh police station, his instructions not to interrogate defendant were ignored by the police. When he arrived at the station, he was told he could not see the defendant. The police chose to conceal defendant’s location at another police station. Moreover, they continued to interrogate defendant in Elmsford and even to extract a written confession from him after his lawyer had entered the proceeding and requested a consultation with his client.
Once a lawyer telephones police headquarters with a request that interrogation of his client be stopped, concealment of defendant’s whereabouts and failure of intra-police communication, does not permit the police to continue questioning defendant as if no lawyer had entered the proceedings (see People v Pinzon, 44 NY2d 458, 464-465). Thus, suppression of the written confession secured in this case after the lawyer had telephoned was necessary and proper (id.). But, in addition, the continuous, unusual, and deliberate isolation of defendant from potential avenues of assistance required suppression of the earlier oral confession as well as the later written one.
When a seemingly conscious scheme like the one used by the police in this case is involved, nice distinctions separating the first confession from the second lose much of their validity. True it is that defendant’s lawyer did not enter the proceedings until after the oral confession had been given. But it is also true that had defendant’s initial, or even later, request to see his mother been honored, the lawyer would undoubtedly have become involved much earlier. Crucial is the continuing effort by the police to prevent defendant from establishing contact with anyone who might be able to provide him with assistance or advice. Encompassed in this scheme are the isolation of Bevilacqua, his transportation to a police *515 station different from that to which the other perpetrators had been taken, failure to honor defendant’s requests to see his mother, and refusal to allow the lawyer Russo to see his client. The scheme succeeded in depriving defendant of his right to counsel. It requires reversal of his conviction.
Reversal, of course, is unfortunate because of the gravity of the offenses charged and the overwhelming evidence of defendant’s guilt. But even those considerations do not permit the courts to overlook the casual overriding by the police of defendant’s constitutional rights.
Accordingly, the order of the Appellate Division should be reversed, and a new trial ordered.