Jasen, J.
(dissenting). I cannot agree with the majority in the reversal of defendant’s convictions of murder, robbery, grand larceny, possession of a weapon and conspiracy in the first degree.[1]
The question squarely presented on this appeal is whether an 18-year-old adult, arrested on six previous occasions and not a novice to the criminal justice system, was fully capable of voluntarily and intelligently waiving his right to counsel, without prior notification to his mother.
Here, the trial court found, and the Appellate Division affirmed, that defendant’s oral admissions were voluntarily made after "he intelligently and knowingly waived his right to counsel on each of the occasions that his Miranda rights were given to him”. Whether the oral admissions were or were not voluntary is a question of fact and we may not disturb these findings except where such findings are premised on clearly insufficient evidence. (NY Const, art VI, § 3; People v De Tore, 34 NY2d 199, 206, cert den 419 US 1025; People v Eisenberg, 22 NY2d 99, 101; People v Leonti, 18 NY2d 384, 389, cert den 389 US 1007; Cohen and Karger, Powers of the New York Court of Appeals, p 742.)
Nevertheless, despite the affirmed finding of fact that the oral confession was voluntarily made, the majority hold that "improper police behavior requires suppression of defendant’s oral confession.” Failure of the police to notify defendant’s mother of his arrest and moving the defendant "from one *516 police station to another” during the course of the investigation are characterized as constituting questionable police behavior, requiring reversal of the convictions.
Turning first to the conduct of the police in failing to contact defendant’s mother, I would point out that the suppression court considered, as a question of fact, this circumstance in determining whether the defendant intelligently and knowingly waived his right to counsel. After weighing the evidence, drawing the necessary inferences from the evidence and passing on the credibility of the witnesses at the suppression hearing, the court found, as a matter of fact, that the defendant waived his right to counsel before making the incriminating admissions. Defendant’s request to see his mother was only one factor of many considered by the suppression hearing court. In considering this factor, the court assessed all of the relevant circumstances, including defendant’s age, criminal justice experience and intelligence in determining the issue of waiver and voluntariness.
When one considers the specific circumstances present here, it should be abundantly clear why the suppression court found that the oral statements of the defendant, made prior to the appearance of an attorney, were voluntary. First, the defendant had been promptly informed of his constitutional rights on two separate occasions prior to the making of the incriminating oral statement. There is no claim, and indeed there can be none, that the warnings were deficient in any manner or that the defendant did not understand his rights. Moreover, it is important to remember that the defendant was not a novice to the criminal justice system, having been arrested on six previous occasions, receiving on each such occasion his constitutional rights. Indeed, the defendant had the presence of mind to ask Investigator Keating during the ride to Elmsford if he had an arrest warrant. Certainly, the defendant’s extensive prior experience with the criminal justice system was an important factor for the suppression court Judge to consider in determining whether he voluntarily waived his right to counsel even though he requested the police to call his mother. As this court cogently observed in People v Carbonaro (21 NY2d 271, 278): "[I]t is important to remember that the defendant in this case was not a young, inexperienced first offender * * * This, of course, does not mean that he may not have had a right to speak to his family; rather, it is relevant *517 in considering the effect upon him of the denial of that right.” (Emphasis added.)
Clearly, it was for the suppression court to pass on the question as to what effect should be accorded to the officers’ failure to contact the defendant’s mother in determining whether the defendant knowingly and intelligently waived his right to counsel and voluntarily confessed the crimes of which he was convicted. Even where there are conflicting inferences to be drawn as to the effect the failure of the police to contact defendant’s mother had upon the defendant, the choice of inferences is for the trier of the facts. And that choice should be accepted by this court, unless unsupported, as a matter of law. Hence, where we have, as we do here, a knowledgeable[2] and criminally experienced defendant, it is reasonable to conclude, as the courts below did, that the officers’ failure to immediately call his mother did not have any effect on his voluntary admission.
The other conduct of the police characterized as questionable by the majority was the movement of the defendant "from one station to another”. The record discloses that throughout his questioning, defendant was only detained at one police station — the Elmsford police headquarters. He arrived there on June 14, 1974 at 7:35 p.m. and made the oral admissions in question prior to Attorney Russo’s call to the Greenburgh police headquarters at about 10:15 p.m. While it is true that the defendant, in addition to making the oral admission, also signed a written confession at 11:15 p.m., the written confession was properly suppressed by the court below and is not now before us. All that is before us is the oral admission made by the defendant before his attorney entered the case. Throughout the interrogation, the defendant was only at one police station and there was no movement of the defendant "from one station to another”. It should be pointed out that all four defendants involved in the crime were arrested on the *518 same evening. They were taken to different police stations. The defendant was sent to the Elmsford station. There is credible testimony in the record that the Greenburgh station did not have the facilities to process multiple defendants. While it is argued by defendant that the actions of the police in taking him to Elmsford and in not contacting his mother effectively "sealed” him off from counsel, I would only say that the defendant, a knowledgeable and criminally experienced person, had it within his power to effectively cease all questioning merely by requesting the presence of counsel.
Indeed, Michael Russo, defendant’s attorney, testified at the suppression hearing that "prior to June 14, 1974 [he] had represented the defendant and his family on many occasions.” This is not, therefore, a case in which an unsuspecting defendant was thrust into an unfamiliar and oppressive environment not knowing where to turn. Rather, the record supports a conclusion that defendant, apprised of his constitutional rights and schooled in criminal proceedings, knew that by requesting his attorney, an individual who had represented him on numerous prior occasions, all questioning would cease. Under these circumstances, the fact that defendant was detained at the Elmsford police headquarters is hardly probative of the voluntariness of defendant’s oral statements.
Nor does our holding in People v Townsend (33 NY2d 37) require a different result. That decision is predicated upon disapproval of police misconduct so extreme as to offend established notions of fundamental fairness. Indeed, in Townsend we noted that the question of whether the mother of the defendant would have retained an attorney had she been apprised of her son’s predicament "is beside the point”. (33 NY2d, at p 41.) In Townsend, the police repeatedly and deliberately lied to the defendant’s mother as to her 17-year-old son’s whereabouts in order to prevent her from seeing him and possibly obtaining counsel for him. The mother repeatedly telephoned the police, even prior to the interrogation, and was told the defendant was not being held. Here, there is no evidence of an affirmative effort to prevent the defendant’s mother from contacting him.
Moreover, the conduct of the police in Townsend was far more overbearing than that which occurred here. For example, in addition to lying to the defendant’s mother, the police secured the critical confession only after long hours of interrogation and after three oral confessions, inadmissible because *519 of a failure to advise defendant of his rights, had been extracted from the defendant. Furthermore, the defendant in Townsend was not as criminally experienced as the present defendant. Viewed in its entirety, the courts below could have found, as they did, that the conduct of the police herein did not offend established notions of fundamental fairness.
Accordingly, I would affirm.
Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur with Chief Judge Breitel; Judge Jasen dissents and votes to affirm in a separate opinion.
Order reversed, etc.

. The codefendants in this cold-blooded murder and robbery, Michael and Robert Gardella and Richard Harris, were similarly convicted after separate trials. The judgments of conviction were affirmed by the Appellate Division and leave to appeal denied by this court to Robert Gardella and Richard Harris (42 NY2d 828).

. The suppression court Judge made this observation of the defendant: "This court had the opportunity to observe the defendant testify under fairly intensive direct and cross-examination. He was obviously completely aware of what was going on, and gave lucid and detailed answers, indicating considerable expertise as to his rights, consistent with that of an intelligent young man who had been arrested and been given his constitutional rights six times before the evening in question. The court believes that he intelligently and knowingly waived his right to counsel on each of the occasions that his Miranda rights were given to him and that the admissions made, before counsel appeared on the scene, therefore, are not subject to being suppressed.”