■    THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD EVANS, Appellant.—Appeal by defendant from a judgment of the County Court, Nassau County, rendered May 24, 1977, convicting him of manslaughter in the first degree and robbery in the first degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress statements. Judgment reversed, on the law, motion granted, plea vacated, and case remitted to the County Court for further proceedings consistent herewith. On February 18, 1976 the defendant and his accomplice, Edwin "Eddie" Fuller, entered the Tru-Value gas station in Farmingdale, Long Island, and ordered the 16-year-old attendant to hand over all of the money. The attendant gave them the money in the cash register. At this point, Fuller ordered the boy to kneel down facing away from the robbers. Fuller then shot him and the boy died shortly thereafter. A little more than a month after the killing, defendant was apprehended and indicted for the crime. Prior to trial defendant moved to suppress a certain confession he had made to the police and a *Huntley* hearing was held, at which the following facts were adduced. At the outset of the investigation, the police had no clues as to the identity of the culprits. A Suffolk County police officer received a tip from a source who stated that on February 18, 1976, the evening of the crime, she was in a house in Wyandanch, Long Island, with Eddie Fuller and "the Evans brothers". According to the informer, Fuller and the Evans brothers left the house that evening, claiming that they had to do a job, and returned later in an excited state, one of them declaring that they had to shoot someone. Although the police officer knew the identity of the informer, he had promised not to reveal it. This tip was placed in the file while other leads were followed. About one month after the murder, the police were engaged in a high speed chase in Hempstead, Long Island, in a car theft incident. Two men were involved, but only one was caught, and he was released on bail. A week after the chase, a young girl turned in a loaded gun which she had found in an area where part of the chase had taken place. A ballistics check indicated that the gun had been used to kill the attendant at the Tru-Value gas station. At this point, officers of the Nassau County homicide squad questioned the individual whom they had captured in the car chase. The man then indicated that Eddie Fuller had been his accomplice in the car theft and had instructed him during the chase to throw the gun out of

the window. The Nassau County officers traveled to Suffolk County and asked officers of the Suffolk County First Precinct to locate the Evans brothers and bring them in for questioning. Two officers were dispatched to the Evans residence where they were greeted by defendant's mother. The officers informed Mrs. Evans that some people wanted to talk to her son Donald and they wanted to ask him to come with them to the precinct. Mrs. Evans responded that Donald was not at home, but was playing basketball at a nearby park. At this point, Donald's brother, Robert Evans, came to the door and the police asked Robert if he would come with them to the precinct. Robert agreed and Mrs. Evans asked if she could come to the precinct with her son. The police officers agreed and Mrs. Evans followed them in her car to the park where defendant was playing basketball. Upon request, defendant consented to go to the first precinct. Defendant and his brother were placed in separate rooms in the back of the precinct. Mrs. Evans remained in the front of the precinct, by the main desk, with other members of the Evans family. She was told that some officers were coming from another district to question her sons and that when they arrived, she would be notified. Shortly thereafter, two Nassau County detectives entered the front door of the precinct, passed by Mrs. Evans and her family, and proceeded to the rear of the precinct. They asked the Evans brothers if they would be willing to go to Nassau County to talk about an investigation they were conducting. The brothers agreed. The Nassau detectives had their car brought to the side of the precinct. The brothers were taken out of the precinct from a side exit without the knowledge of Mrs. Evans and were transported to Mineola. At least one of the police officers knew that defendant was only 17 years old and that several members of his family were present at the precinct. However, the Nassau detectives did not inform the Evans family that they were moving Donald and Robert, nor did they ask the Suffolk police to do so. In fact, Mrs. Evans was not apprised of this development and only when she inquired about her sons, some 30 minutes after they had left the precinct, was she told that they had departed. Mrs. Evans testified that she was told that her sons had been taken to a precinct in Nassau, in the Seaford area. Her testimony on this point was not contradicted. Mrs. Evans proceeded home and informed her family that she would be in Seaford with Donald and Robert. With Mrs. Evans were several others, including one Gary Thompson. Mrs. Evans then drove to the precinct in Seaford and discovered that her sons were not there. The desk officer called police headquarters in Mineola and informed Lieutenant Chambers, who was co-ordinating the investigation, that Mrs. Evans wanted to speak to him. Chambers did not speak with Mrs. Evans, but instead instructed the desk officer to hold the Evans party until officers arrived to arrest Gary Thompson. In the meantime, the defendant had been interrogated by Detective Santamaria of the homicide squad and although he was initially hesitant to speak, he eventually confessed to the crime. At the close of the *Huntley* hearing, the court denied defendant's motion to suppress the confession and defendant then pleaded guilty to the crimes of manslaughter in the first degree and robbery in the first degree. Since the confession should have been suppressed, the judgment of conviction must be reversed and the plea vacated. At the time of his arrest, the defendant was a minor, still residing in his mother's home. Therefore, when the police officers asked defendant and his brother to come to the precinct, it was natural and appropriate that Mrs. Evans wished to accompany her sons to look out for their interests. Indeed, both Donald and Robert consented to go to the precinct with the understanding that their mother would be present. Mrs.

Evans went to the precinct in Suffolk and, upon hearing that her children had departed for a precinct in Nassau, she drove to the one in Seaford. In short, Mrs. Evans never abandoned her intention to be present while her sons were being questioned, and it was only the conduct of the police which deflected her from that goal. The Court of Appeals has emphatically condemned police conduct which interferes with the process by which a suspect and his family communicate, whether it is the suspect attempting to contact his family or, as in this case, the family trying to reach its relative who is in custody (People v Bevilacqua, 45 NY2d 508; People v Townsend, 33 NY2d 37). Moreover, the police conduct is equally objectionable whether it was deliberate or inadvertent, for the Court of Appeals has held that once the police have a suspect in custody, they have an obligation to establish and maintain procedures so that the suspect is not held beyond the reach of those who would give him counsel (People v Pinzon, 44 NY2d 458). This obligation is especially important where the suspect is a minor, still residing in his mother's home, and presumably still reliant on her for guidance. It is unfortunate that this judgment must be reversed for, as we noted in the codefendant's appeal, this was a particularly wanton and cruel killing of a 16-year-old boy in the course of a robbery (People v Fuller, 65 AD2d 823). However, in light of the police conduct in this case, the conviction cannot be based upon defendant's illegally obtained confession. Hopkins, J. P., Lazer, Cohalan and Martuscello, JJ., concur.