■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD BOYKINS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered November 28, 1977, and amended on December 6, 1977, convicting him of four counts of murder in the second degree (two counts of felony murder and two counts of common-law murder), and two counts of assault in the second degree, upon a jury verdict, and imposing sentence. Judgment, as amended, affirmed. This appeal brings up for review the issues of whether, after a combined *Huntley* and *Wade* hearing, the two confessions of defendant should have been suppressed, and whether weapons used by defendant and his accomplices and moneys stolen by them during the two robberies also should have been suppressed. The physical evidence was retrieved by the police from the apartment of defendant's mother, with her consent. The alleged felonious assaults which resulted in the death of two of the three victims occurred during the course of two separate robberies on the afternoon of November 17, 1976. According to the first confession of defendant, the robbery of Vega, an elderly male who was fatally stabbed during the crime, netted defendant and his cohorts the sum of 28¢. The second robbery, of Dawson and Turnbaugh, two delivery men for Macy's Department Store, occurred two hours later and resulted in Dawson's death by stabbing and serious physical injuries to Turnbaugh. This robbery netted the alleged perpetrators the sum of $23. At the time of the occurrence, defendant was 16 years of age. With respect to the application to suppress his two confessions, defendant asserts on appeal that in view of his young age at the time the homicides were committed, the two incriminating statements made by him to law enforcement authorities, without an attorney being present on his behalf, were elicited despite his failure to interpose a knowing, intentional and voluntary waiver of counsel. We disagree. In our opinion, the testimony adduced at the hearing from two detectives, an Assistant District Attorney and defendant himself, fully supports the trial court's determination that notwithstanding his age, defendant, before giving the two statements, interposed a knowing, intentional and voluntary waiver of his right to counsel. Although the relative youthful age of one giving an inculpatory statement to law enforcement authorities is a factor to be weighed in determining the voluntariness of a purported waiver of counsel, it is not determinative. Other factors which must also be

considered are the prior experience of a criminal nature, if any, an accused youth has had with the police, any evidence of coercion by the police prior to obtaining the waiver, and whether the *Miranda* warnings were fully, clearly and adequately administered to the youth. In the instant matter, the record reveals that defendant had been arrested as an adult on two separate occasions less than two months before he was apprehended for the crimes involved herein. The two prior arrests, respectively, were in connection with a robbery of $2 from a juvenile and purse snatching. Furthermore, according to his own testimony at the hearing, defendant admitted he was not coerced into giving the two incriminatory statements to law enforcement officials. On more than one occasion during the questioning at the police station, defendant indicated that he understood the meaning and significance of his pre-interrogation rights. Based on the totality of the circumstances, we believe that despite his age at the time, defendant had the capacity to understand the adequate *Miranda* warnings read to him, the nature of his Fifth Amendment rights, and the consequence of waiving those rights (see *Fare v Michael C.*, 442 US 707, 725). We also reject defendant's contention, raised for the first time on appeal, that his cold, detailed and impassive accounts of the two violent and brutal, albeit, unrelated murders, two hours apart, evinced an insane state of mind. Although his account to the police of the wanton killings is undeniably repulsive and chilling, and manifests a patent disregard for human life, the record is bereft of so much as a scintilla of evidence that defendant was suffering from a mental disorder or defect at the time of the incidents. In view of defendant's admission that he and his accomplices went through the elderly victim's pockets and took 28¢ before one of them stabbed him in the chest three times, and that later they decided to "rip it [the Macy's truck] off * * * and waited to grab the driver", the assertion in defendant's brief on appeal that the double killing was "without any rational motive", is specious and incomprehensible. Finally, on the issue of suppression of the two confessions, defendant, in his supplemental brief on appeal, claims that he was denied access to his parents during the earlier interrogation by the two detectives, Crosby and Lombard, as well as the later interrogation by Assistant District Attorney Samuel, thus preventing him from obtaining the assistance of counsel. He also claims that his parents were denied access to him by the police during those critical periods (see *People v Townsend*, 33 NY2d 37, 41; *People v Rivera*, 78 AD2d 556). These contentions are likewise without merit. First, defendant testified at the *Huntley* hearing that he did not ask to speak to his parents before he made the earlier confession to the police. Moreover, according to the testimony of Detective Lombard, defendant did speak to his mother after the initial interrogation. It should be noted that the minutes of the hearing are not clear as to whether defendant's father was ever present at the police station on the evening of November 17, 1976. Although Detectives Crosby and Lombard believe he was present, defendant's mother testified that the man who accompanied her to the police station that evening was a friend of hers. With respect to her absence when defendant was interrogated later that evening by Assistant District Attorney Samuel, no evidence was adduced at the hearing that she was either present or dissuaded from being present at the second interview, or that she ever indicated she wanted her son to be advised by counsel beforehand. We also conclude that the record does not support defendant's contention that his mother was denied access to her son before he confessed to Detective Crosby. According to Crosby and Lombard, defendant was arrested at about 5:30 P.M. on the evening of November 17 and was brought to the station house. After being read his

rights, defendant stated that he understood them and was willing to proceed without an attorney. He then gave a short and vivid narration of the two brutal assaults in which he participated on November 17, 1976. That his brief confession to the detectives, commencing at approximately 6:40 P.M., was completed before his mother and her companion arrived at the police station, is readily inferred from the testimony of Detective Lombard that defendant's mother and her companion arrived there at about 9:00 P.M. Furthermore, Detective Crosby testified that the couple came "after the interview". Accordingly, the trial court was warranted in holding, from the facts adduced at the hearing, that a parent or parents of defendant were not denied access to him or to his whereabouts, within the ambit of *People v Townsend* (33 NY2d 37, *supra).* With respect to the court's refusal to suppress the weapons used and moneys stolen during the two robberies, we concur with its finding that defendant's mother voluntarily gave permission to Detective Lombard to retrieve such items from her apartment, where they were secreted by defendant, and that her consent was not induced by promise, trick, cajolery or other improper method (cf. *People v Prochilo,* 41 NY2d 759). We also reject defendant's contention that the consecutive sentences of 20 years to life imposed by the trial court on his convictions of murder with respect to each individual is harsh since they constitute a minimum sentence of 40 years. Under the provisions of section 70.30 (subd 1, par [b]) of the Penal Law, applicable at the time of defendant's sentencing in 1977, the minimum terms under consecutive sentences were merged by operation of law, thus producing in the aggregate a 20-year minimum. Titone, J.P., Rabin, Margett and Weinstein, JJ., concur.