## (December 8, 1983)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CRAIG WINCHELL, Appellant. — Appeal from a judgment of the County Court of Fulton County (Albanese, J.), rendered April 20, 1982, upon a verdict convicting defendant of the crime of murder in the second degree. On August 26, 1981, the 16-year-old defendant was indicted and charged with rape in the first degree and two counts of murder in the second degree resulting from the August 8, 1981 death of 16-year-old Wendy Palmateer. Following a pretrial *Huntley* hearing, defendant's motion to suppress his oral and written statements was denied. At the close of the trial evidence, the People withdrew the rape charge and the trial court dismissed the count of felony murder. Thereafter, the jury convicted defendant of second degree murder and he was sentenced to a term of

imprisonment of 18 years to life. This appeal ensued.[*] Defendant urges that his statements should have been suppressed because the police intentionally isolated him from the assistance of his mother prior to questioning (see *People v Townsend,* 33 NY2d 37). In rejecting this contention, the suppression court determined that defendant was not in custody prior to making the challenged statements and that nothing in the record evidenced any deception on the part of the police to obtain a confession. We agree. The record shows that on August 18, 1981, Senior Investigator Cleveland Spraker responded to the scene of 81 Prospect Avenue in Gloversville, where the victim's body had been discovered under a garage. Shortly thereafter, Spraker received a dispatch that one Craig Winchell had been assaulted. Spraker and Lieutenant Gary Canfield proceeded to the Winchell house where they spoke to defendant and his mother. Spraker requested that defendant accompany him to the police station for the purpose of preparing a composite sketch of his assailant. Defendant's mother indicated a desire to accompany her son but, when the police counseled against it, defendant agreed to go to the police station alone. Once at the police station, defendant was initially questioned concerning his assailant, and after giving some confused answers, admitted to Spraker that he had been lying. At this point, Spraker advised defendant he was going to accuse him of a crime and gave the required *Miranda* warnings. When defendant acknowledged he understood these rights, which he expressly agreed to waive, Spraker later recalled the following conversation taking place: " '[B]efore you state anything to me, what I am accusing you of is that we just found a body at 81 Prospect Street under a garage, and we believe that it is Wendy Palmateer.' Defendant immediately blurted out in a voice to me and stated, 'I put the body there. It is Wendy Palmateer.' " A lengthy narrative was reduced to writing, which defendant sought to suppress. We first find that defendant was not in custody until he was given his *Miranda* warnings. Defendant conceded that he voluntarily accompanied the officers to the police station and there is nothing to refute Spraker's testimony that defendant was considered a victim, not a suspect, prior to questioning at the station house. These circumstances prevailing, it is clear that the questioning by the police was investigatory rather than custodial in nature and constituted a proper discharge of their duty to investigate his complaint of an alleged assault (*People v Mertens,* 97 AD2d 595; *People v Yanus,* 92 AD2d 674). That the interview was conducted, in part, at the police station does not compel a different result since there was no indication that defendant was not free to leave (*People v Ellis,* 83 AD2d 652). Further, contrary to defendant's contentions, we find no evidence of any trickery or deception on the part of the police to isolate defendant from his family's assistance in an effort to deprive him of his right to counsel (*People v Fuschino,* 59 NY2d 91, 100, affg 87 AD2d 716; *People v Bevilacqua,* 45 NY2d 508; *People v Townsend,* 33 NY2d 37, *supra; People v Suhalla,* 97 AD2d 857; *People v Murphy,* 97 AD2d 873). To the contrary, the record establishes that Spraker became suspicious of defendant only after the latter failed to recall the details of the alleged assault and admitted he was lying. Nor does the record establish any deliberate attempt to isolate defendant from his mother, who arrived at the police station shortly after defendant. While defendant was being questioned, his mother made several requests to see him. In response, the desk officer indicated he would inform Spraker of her presence when he completed his questioning about the assault. To be emphasized here is that the desk officer was not aware that defendant was anything other than an assault victim. As such, no intent to isolate defendant can be ascribed to his conduct. Nor is there any evidence that either defendant or his mother relied on

---

[*] This court acknowledges receipt of the petition forwarded by the "Committee for Winchell" but notes that the decision is based, as required, solely on the record before us.

Assistant District Attorney Vincent De Santis, who previously represented defendant in Family Court proceedings while in private practice, or that he in any way influenced defendant's decision to complete his written statement. It is further significant that at no time during the interrogation did defendant request his mother's assistance or exercise his right to counsel. Accordingly, we cannot agree that there was any preconceived scheme to obtain a confession. Under these circumstances, defendant was not denied his constitutionally guaranteed right to counsel and the motion to suppress was properly denied. Defendant further argues that the People failed to prove cause of death beyond a reasonable doubt and theorizes the victim died by aspiration of vomit, not strangulation. He attempts to support his theory by comparing the "normal" weight of the lungs with the other internal organs which were substantially less in weight due to decomposition. From this, defendant infers the presence of additional matter within the lungs which he argues confirms the aspiration of vomit theory. We disagree. Defendant has mistakenly interpreted the testimony of Dr. J. N. P. Davies, the prosecution's pathologist, who expressly ruled out the possibility of aspiration of vomit and opined the victim was asphyxiated by strangulation by a ligature. While Dr. Davies testified on direct examination that the lungs were of "normal" weight, this assessment was based on what was normal under the circumstances, i.e., normal for an extremely decomposed body. Dr. Davies testified that the total weight of the lungs was approximately 300 grams, well below the average weight for a healthy 16-year-old girl (see Gradwohl's Legal Medicine [3d ed], p 666). Essentially, defendant's theory is based on a discrepancy between the weight of the lungs and the other organs which simply does not exist. Further Dr. Davies based his opinion not simply on the weight of the lungs, but also on the presence of petechial hemorrhages in the lungs, a certain amount of hemorrhaging in the larynx, and the presence of a tightly tied ligature — a brassiere — around the victim's neck. Since the jury could properly accredit the testimony of Dr. Davies, we find, viewing the evidence most favorably to the People (*People v Lagana,* 36 NY2d 71, 73, cert den 424 US 942), that the cause of death was established beyond a reasonable doubt. We have examined defendant's remaining contentions and find them without merit. Our review of the record convinces us that the impropriety, if any, of the trial court's comments pertaining to the qualifications of Dr. Davies did not serve to prevent the jury from arriving at an impartial judgment on the merits (*People v Moulton,* 43 NY2d 944, 946). Particularly is this so since the court continually advised the jury to keep an "open mind" and properly charged that the credibility of all witnesses, including the experts, was within their sole province (see *People v Hurel,* 60 AD2d 537; *People v Leahy,* 60 AD2d 558). Further, the court did not abuse its discretion by admitting into evidence photographs of the victim's badly decomposed body. "Photographic evidence should be excluded only if its *sole purpose* is to arouse the emotions of the jury and to prejudice the defendant" (emphasis added) (*People v Pobliner,* 32 NY2d 356, 370, cert den 416 US 905; see *People v Bell,* 94 AD2d 894, 896; *People v Mosher,* 81 AD2d 684, 685). Here, the photographs were relevant in that they exhibited a causative factor of death, the brassiere twisted around the victim's neck, and demonstrated the inconsistency in defendant's testimony as to how he placed the body under the garage. Despite their admittedly gruesome nature, the photographs were probative of relevant issues and not presented solely to inflame the jury. While the same may not be said with regard to the portrait of Wendy Palmateer, which was not probative of any relevant issue, we conclude that any prejudice emanating from this exhibit was essentially harmless. Although the trial court erred in excluding evidence pertaining to defendant's sexual relationship with the victim, admissible pursuant to CPL 60.42 (subd

1), the exclusion was harmless error (*People v Crimmins,* 36 NY2d 230, 240-242). The proffered evidence was simply too remote to have any discernible impact on the verdict, and defendant was himself allowed to testify as to his sexual relationship with the victim. Finally, no error occurred in allowing the prosecution to impeach its own witness, Melissa Nicolella, with her prior inconsistent statements. Since Nicolella denied at trial that defendant had admitted the crime to her, directly contradicting her earlier sworn statements, the prosecution was entitled to impeach her testimony (CPL 60.35, subd 1; see *People v Fitzpatrick,* 40 NY2d 44, 51). Judgment affirmed. Sweeney, Casey, Weiss and Levine, JJ., concur.

Mahoney, P. J., dissents and votes to reverse in the following memorandum. Mahoney, P. J. (dissenting). I cannot agree with the majority's conclusion that defendant's statement is admissible. In *People v Townsend* (33 NY2d 37), the Court of Appeals held that: "[I]t is impermissible for the police to use a confession, even if it be otherwise voluntary, obtained from a 17-year-old defendant when, in the course of extracting such confession, they have sealed off the most likely avenue by which the assistance of counsel may reach him by means of deception and trickery" (*id.,* at p 41). It has been held that the police may not intentionally hold a juvenile defendant beyond the reach of his or her parent for the purpose of questioning such defendant (*People v Rivera,* 78 AD2d 556; *People v Evans,* 70 AD2d 886). In this case, the People contend that defendant was not brought to the police station as a suspect but voluntarily accompanied them for the purpose of describing his alleged assailant. The evidence indicates that defendant had been the victim's boyfriend and, having been known to be the last person to have seen her alive, had been questioned by the police as to her whereabouts. Moreover, the body was discovered near defendant's parents' house and was believed to be the body of Wendy Palmateer. This evidence renders suspect the People's contention that defendant was not taken to the police station as a target of the Palmateer investigation, particularly in light of the unexplained quantum leap that the police officer who questioned defendant made from the fact that defendant could not describe his assailant to the suspicion that he was involved in the killing of the victim. Even assuming that defendant was not a suspect when the questioning began, it does not necessarily follow that the statement is admissible. It may be true that defendant was not technically in custody when he was taken to the police station. However, defendant was clearly placed in custody at the time the questioning officer informed him that he was suspected of a crime and informed him of his *Miranda* rights. At that point, the questioning officer was personally aware that defendant's mother wanted to accompany her son to the police station, that defendant wanted her to come along and that he, the interrogating officer, had dissuaded her from coming. Moreover, by that time, defendant's mother had arrived at the police station and had several times told the desk officer that she wished to speak to her son. Knowledge of her presence is thus imputed to the questioning officer (*People v Pinzon,* 44 NY2d 458, 464). Defendant's mother was not allowed to speak to her son and was told that the police officers were calming her son down when, in fact, they were eliciting from him the incriminating statement. Since, after defendant was in custody, the police were well aware that his mother wished to speak to him, yet prevented her from doing so, the incriminating statement was improperly obtained. The fact that defendant was advised of his *Miranda* rights does not mandate a different result (*People v Bevilacqua,* 45 NY2d 508), nor does the fact that defendant initially came to the police station voluntarily (*People v Townsend, supra*). This case is clearly distinguishable from *People v Fuschino* (87 AD2d 716, affd 59 NY2d 91), wherein we found, *inter alia,* that there was no violation of defendant's right to counsel in the failure of the police to comply

with his request to call his mother, absent evidence that the police intentionally deprived the defendant of access to his family in an effort to bar his exercise of his right to counsel and to obtain a confession. Here, unlike *Fuschino,* there is proof that the police suspected defendant might be Wendy Palmateer's killer, as evidenced by their interrogation of him prior to their investigation of defendant's alleged assault. The police, in the person of the officer who interrogated the juvenile defendant, dissuaded the mother from accompanying her son to the police station and, more importantly, continued his interrogation after the desk officer knew that defendant's mother was physically present in the station house and wanted to talk to her son. These facts, in my view, clearly involve the principle enunciated in *People v Townsend* (*supra*) that, even if a statement is otherwise voluntary, it is impermissible for the People to use such a confession at trial when, in the course of extracting such confession, the police hold a juvenile defendant beyond the reach of his or her parent. In my view, defendant's incriminating statement was improperly obtained and was, therefore, inadmissible. Accordingly, I would reverse the conviction.