THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v FARLEY BUTLER, Respondent.—Appeal by the People from so much of an order of the Supreme Court, Queens County (Lakritz, J.), dated March 22, 1983, as, after a hearing, granted that part of the defendant's motion which sought the suppression of certain oral statements.

Order affirmed insofar as appealed from.

Defendant was indicted, *inter alia,* on a charge of murder in the second degree in connection with an incident that allegedly took place on or about June 28, 1982. Detective Bernard Judge, accompanied by two police officers, approached the defendant (then 17 years of age), and his brother as the two young men sat on the steps outside of their home. Upon being questioned, defendant's brother informed the police of their names, and stated that they lived in the residence with their mother. Defendant was then physically removed to the sidewalk beyond the gate, where he was formally arrested.

While the defendant was being placed into the police car, his mother exited the house and inquired of the police officers where they were taking her son. Her questions were not answered. She subsequently learned from her other son that the defendant was being taken to the 105th Precinct station house, and she immediately procured the help of a friend to drive her there. Upon her arrival, she asked to see her son and talk to the detectives, but was required to wait a long time before Detective Judge finally came out to speak with her.

In the meantime, the detective had questioned the defendant about the homicide, after informing him of his *Miranda* rights. At about 1:30 A.M., defendant participated in a videotaped statement in which he informed the authorities that he was not willing to answer any questions without an attorney present. Detective Judge subsequently questioned the defendant as to why he had refused to make a statement, and explained to the defendant that the videotaping was merely something that had to be done in order to protect his legal rights. The detective also told the defendant that "he should make the statement if he wanted to, that it would help him in this case since he was part of the crime". A second videotaped interview was thereafter held with the defendant in which a detailed inculpatory statement was elicited.

At some point during the evening or early morning hours, Detective Judge spoke with the defendant's mother and told her that he did not think that her son was involved in the

murder, but that he knew about it or was covering up for a friend. Defendant's mother repeatedly asked to see her son, but was refused access and was told that the police merely wanted to interrogate him and that she would be called to pick him up when the interrogation was over. Thus, the mother left without any opportunity to see her son, and under the distinct impression that an attorney was not necessary.

On this record, we cannot say that the People have met their burden of proving the voluntariness of the challenged statements beyond a reasonable doubt (*People v Huntley*, 15 NY2d 72, 78). The evidence indicates a seemingly conscious scheme to isolate the defendant from his mother in an apparent effort to bar his free exercise of the right to counsel (*People v Bevilacqua*, 45 NY2d 508; *People v Townsend*, 33 NY2d 37).

Additionally, we agree with Criminal Term that the second videotaped interview would have to be suppressed in any event. Defendant had already invoked his right to counsel (*People v Carmine A.*, 53 NY2d 816, 818), and could not thereafter voluntarily waive that constitutional right in the absence of counsel (*People v Cunningham*, 49 NY2d 203, 205). Thompson, J. P., Niehoff, Lawrence and Kunzeman, JJ., concur.