People v Kemp (2023 NY Slip Op 00776)

People v Kemp

2023 NY Slip Op 00776

Decided on February 10, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 10, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, LINDLEY, BANNISTER, AND MONTOUR, JJ.

960 KA 21-00935

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
BENJAMIN KEMP, DEFENDANT-APPELLANT. 

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (SARA A. GOLDFARB OF COUNSEL), FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (BRADLEY W. OASTLER OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Onondaga County Court (Thomas J. Miller, J.), rendered June 23, 2021. The judgment convicted defendant, upon a jury verdict, of murder in the second degree (two counts), criminal possession of a weapon in the second degree (two counts) and attempted robbery in the first degree (two counts). 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, that part of defendant's omnibus motion seeking to suppress statements defendant made to his father in the interview room at the police station is granted, and a new trial is granted.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, two counts of murder in the second degree (Penal Law § 125.25 [1], [3]). Defendant contends that County Court erred in denying that part of his omnibus motion seeking to suppress recorded statements that he made to his father in an interview room at the police station after he asserted his right to counsel. We agree.
"It would be difficult to think of a situation which more strikingly embodies the intimate and confidential relationship which exists among family members than that in which a troubled young person, perhaps beset with remorse and guilt, turns for counsel and guidance to [a parent]" (Matter of A. & M., 61 AD2d 426, 429 [4th Dept 1978]). "Unlike conversations between a suspect and his attorney, however, communications between parent and child do not enjoy the protection of the Sixth Amendment, nor are they privileged either under common law or by statute" (People v Harrell, 87 AD2d 21, 25 [2d Dept 1982], affd 59 NY2d 620 [1983]). Nonetheless, a parent-child privilege has been recognized in certain circumstances and "that privilege is rarely more appropriate than when a minor, under arrest for a serious crime, seeks the guidance and advice of a parent in the unfriendly environs of a police precinct" (id. at 26; see A. & M., 61 AD2d at 429; see generally People v Bevilacqua, 45 NY2d 508, 513 [1978]).
Here, defendant was 15 years old at the time of the indicted offenses and his arrest and the police were therefore statutorily required to contact a parent or guardian when he was taken into custody (see CPL 140.20 [6]). It was as a result of that notification that defendant's father joined him in the interview room, where defendant had been waiting by himself prior to the interview. As seen on the video recording of the interview room that was admitted into evidence at the suppression hearing, defendant looked to his father for advice throughout the short interview with two detectives, including expressly asking his father whether he should keep speaking with the detectives or ask for a lawyer. Based on his father's advice, defendant requested an attorney and ended the interview. The detectives then left defendant alone with his father in the interview room, but said nothing regarding the presence of recording devices. Once ostensibly alone, defendant started to speak to his father, who responded by admonishing defendant not to speak because there were cameras in the room. Defendant nonetheless moved closer to his father, covered his face with his hands, and continued to attempt to converse quietly [*2]with his father.
We conclude that a parent-child privilege did arise under the circumstances of this case (see Harrell, 87 AD2d at 26). The application of the privilege is not dependent on a finding of police misconduct (see id. at 24-26) and we are therefore not called upon to review either the rationale proffered by the detective who testified at the suppression hearing for the recording of defendant's conversation with his father or the failure of either interviewing detective to warn defendant about the recording devices. Instead, we recognize, as other courts have, that a young defendant will naturally look to a parent "as a primary source of help and advice" (Bevilacqua, 45 NY2d at 513; see Harrell, 87 AD2d at 24; see also A. & M., 61 AD2d at 429). The statements defendant now seeks to suppress were made in an attempt to utilize his father as such a source of assistance. "It would not be consistent with basic fairness to exact as a price for that assistance, his acquiescence to the overhearing presence of government agents" (Harrell, 87 AD2d at 26; see A. & M., 61 AD2d at 429).
We reject the People's contention that defendant waived any applicable privilege by continuing to speak after his father warned him about the cameras. Generally, a party may waive any applicable privilege when communications are knowingly made in front of a third party (see e.g. Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d 616, 624 [2016]; People v Harris, 57 NY2d 335, 343 [1982], cert denied 460 US 1047 [1983]; Calhoun v County of Herkimer, 169 AD3d 1495, 1497 [4th Dept 2019]). Here, however, most of defendant's statements to his father are inaudible as a direct result of defendant's efforts to prevent his conversation from being overheard and recorded. Defendant therefore attempted to speak "to his father in confidence and for the purpose of obtaining support, advice or guidance" and it may easily be inferred from the father's warnings "that the father wished to remain silent and keep [defendant's statements] confidential" (Matter of Mark G., 65 AD2d 917, 917 [4th Dept 1978]). Thus, this is not a case where a defendant waived any privilege by knowingly speaking openly in front of third parties (cf. People v Tesh, 124 AD2d 843, 844 [2d Dept 1986], lv denied 69 NY2d 750 [1987]).
We also reject the People's further contention that any error in admitting the recording of defendant's conversation with his father is harmless. As noted, the majority of defendant's statements are inaudible and the phrases that are discernible, including isolated words such as "body," "killed," and "rob," are devoid of any specific context. One of the detectives who participated in the interview of defendant testified at trial that he could hear only "part" of defendant's conversation with his father on the recording, but nonetheless testified that defendant "appear[ed]" to say on the recording, "maybe he forced me or they forced him." The prosecutor also implied in a question that defendant said "something about he was only supposed to rob the dude," however, the detective testified that he was unable to hear that himself. Inasmuch as the jury specifically requested that the recording of defendant's statements to his father be replayed during deliberations, we cannot conclude that the error in admitting the privileged statements was harmless (see generally People v Crimmins, 36 NY2d 230, 241-242 [1975]), particularly in light of the quality of the recording, which may have resulted in impermissible jury speculation regarding a purported confession that defendant never in fact made (see People v Melendez, 196 AD3d 647, 650 [2d Dept 2021]). We therefore reverse the judgment, grant that part of the omnibus motion seeking to suppress the statements made by defendant to his father at the police station and we grant a new trial. In light of our determination, defendant's remaining contentions are academic.
Entered: February 10, 2023
Ann Dillon Flynn
Clerk of the Court