■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES ROSS, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered July 21, 1978, convicting him of robbery in the first degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. By reason of the prejudicial effect of the following repeated prosecutorial improprieties the defendant was deprived of a fair trial. During the course of the trial, the sole identification witness, Carol McCloud, testified that she had identified the defendant as the perpetrator of the crime after he was brought into a hallway by Police Officer Guthrie. The prosecutor then embarked upon the following line of questioning, over objection, of other witnesses who were present when McCloud made the identification, and which questions were calculated to, and did, evince answers which improperly bolstered such identification testimony in violation of the principles of *People v Trowbridge* (305 NY 471). Police Officer Guthrie testified: "Q Did anything happen out in the hallway? A Yes. Q What? A *He was identified by Carol McCloud.* MR. MILLER [defendant's attorney]: Objection. THE COURT: Sustained. Q Did anyone say anything when he came out in the hallway? MR. MILLER: Objection. THE COURT: Overruled. Q Did anyone say anything when he came out in the hallway? Did Carol McCloud say anything? MR. MILLER: Objection. THE COURT: Overruled. Q Did Carol McCloud say anything when he stepped out in the hallway? A In essence, she spontaneously pointed and she said, 'That's him.' " (Emphasis added.) Although the improper responses were stricken, the Assistant District Attorney persisted and

elicited the following answers from the witness: "Q Did you observe Carol McCloud do anything when you walked out in the hallway? A Yes. Q As a result of her doing something, did you take any further police action? A Yes. Q What was that? A I arrested Ross." Police Officer Knecht, who was also present when McCloud identified the defendant in the hallway, testified as follows: "Q Did anything happen when he came out with the defendant? A Yes, the complainant came upstairs or was upstairs, I'm not sure and *she began pointing over my shoulder.* MR. MILLER: Objection, your Honor. THE COURT: Sustained. Q When you say the complainant, do you mean Carol McCloud? A Yes, I do. MR. MILLER: Objection, your Honor. THE COURT: Overruled. Q Are you saying Carol McCloud was in back of you? A Yes, she was. Q And are you saying she did something—I'll withdraw that. At the point—at the time you first noticed Officer Guthrie and the defendant, did you see Carol McCloud do something? MR. MILLER: Objection. THE COURT: Overruled. A Yes, I did. Q Immediately prior to Officer Guthrie's escorting the defendant out of the apartment, did you say anything to Carol McCloud? MR. MILLER: Objection. THE COURT: Sustained. Q After Carol McCloud did something, did Officer Guthrie take any police action? A Yes, he did. Q What did he do? A He placed the defendant under arrest." (Emphasis added.) In addition to the direct bolstering testimony obtained from Police Officer Guthrie to the effect that Carol McCloud identified the defendant in his presence, and the testimony obtained from Police Officer Knecht that when the defendant was brought into the hallway "she began pointing over my shoulder", the error was further compounded when the Assistant District Attorney elicited very suggestive testimony from the two police witnesses and witness John Lane to the effect that the defendant's arrest followed immediately upon his confrontation with Carol McCloud in the hallway. The inevitable effect of such response was to impress in the minds of the jurors that the identification evidence was of such high reliability as to justifiably warrant prompt official police action. These improper questions were addressed to the witnesses for no other purpose than to obtain answers which would endow "such proof with an undeserved aura of trustworthiness" *(People v Trowbridge,* 305 NY 471, 477, *supra)* which, apart from improper purpose, completely lacked any probative value on the issue of identification. Here, the identification of the defendant as a perpetrator of the robbery rests upon the sole testimony of the victim's daughter, Carol McCloud. Under these circumstances, the extensive and repeated violations of the *Trowbridge* rule *cannot* be overlooked inasmuch as "the evidence of identity is [not] so strong that there is no serious issue upon the point" *(People v Caserta,* 19 NY2d 18, 21; *People v Napoletano,* 58 AD2d 83, 91). Titone, J. P., Gibbons, Margett and O'Connor, JJ., concur.