THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
CURTIS WARD, Appellant.

Second Department, September 12, 1983

APPEARANCES OF COUNSEL

*William E. Hellerstein (Robert E. Precht* of counsel), for
appellant.

*John J. Santucci, District Attorney (Gary S. Fidel* and
*Richard G. Denzer* of counsel), for respondent.

OPINION OF THE COURT

TITONE, J.

Defendant appeals from a judgment of the Supreme
Court, Queens County, convicting him of sodomy in the
first degree, following a jury trial, and imposing sentence.
The issue is whether the People met their burden of estab-
lishing that a statement elicited from him was voluntarily

made and the product of a knowing and intelligent waiver of constitutional rights. We hold that they did not.

Acting in response to a radio run distress call, Police Officer Leon Clark proceeded to the intersection of 109th Avenue and Farmers Boulevard in Queens where he observed the defendant standing next to a 13-year-old boy and the boy's mother. Defendant was 15 years old at the time.

Based upon an assertion made by the other boy's mother that the defendant had robbed and sodomized her son, Clark placed the defendant under arrest and had him transported to the station house. Once there, defendant was taken to the men's room, where several other officers were present, and subjected to a strip search.

After the search was completed, Clark brought defendant for questioning to what he referred to as a specially designated youth processing area. Other police officers were present. Having learned that defendant was 15 years old, Clark called the defendant's mother before interrogation began. She advised Clark that she did not want to have anything to do with her son or his problems and then hung up.

Immediately thereafter, Clark, reading from a department form, recited the *Miranda* warnings to defendant. Without any explanation or further elaboration, Clark asked defendant whether he understood each of the rights that had been read to him and defendant replied "yes". After asking defendant whether he was willing to answer questions without an attorney being present, and receiving an answer in the affirmative, Clark then told defendant: "[I]t looks pretty rough for you in the sense that you know your mother doesn't [want to] have anything to do with you. There is a complainant who is stating the fact that you committed a certain crime, and if you are willing to talk to me about it or tell me your participation * * * I will see that it will be handled fairly".

Shortly after making this statement Clark obtained a verbal admission from defendant. In substance, defendant told Clark that after accosting the 13-year-old youth he walked him around the corner into a driveway, removed a sum of money from the youth, and forced him to commit an

act of oral sodomy. Clark conceded that at some point after defendant had been advised of his rights and after he had made the statement, defendant asked how he could obtain the services of an attorney. We also note that, at trial, the victim's mother testified that while at the police station she was within close proximity to the defendant during the interrogation, overheard him make the admission and he was crying at the time.

Defendant's motion to suppress the statement was denied following a *Huntley* hearing, Criminal Term finding that he had been advised of his constitutional rights and had waived them. We come to ، contrary conclusion. The totality of circumstances compels us to conclude that the defendant did not knowingly and intelligently waive his right to counsel and the statement was made involuntarily (see *People v Anderson,* 42 NY2d 35, 38; *People v Bay,* 76 AD2d 592, app dsmd 54 NY2d 808; cf. *Fare v Michael C.,* 442 US 707).

Manifestly, the strip search of the juvenile defendant in the presence of a number of other police officers was itself extremely coercive. The coercive atmosphere was greatly compounded by Clark when, shortly thereafter, he paraded defendant into an area for questioning where a number of other police officers were also present and where the victim's mother was within relatively close visual and hearing proximity during the ensuing interrogation. Clark's further action in inducing the defendant to incriminate himself when he advised him that his mother had in effect abandoned him, significantly exacerbated the situation. When added to this scenario the further realization that defendant was crying while making the statement, and sought the services of an attorney shortly thereafter, the custodial interrogation of the then 15-year-old defendant rendered his waiver ineffective and the resulting statement involuntary as a matter of law.

A child of 15 years of age should not be judged by the more exacting standards of maturity (*People v Bevilacqua,* 45 NY2d 508; *People v Townsend,* 33 NY2d 37). That which leaves an adult cold and unimpressed may overawe and overwhelm one in his early teens. This is the period of

great instability which the crisis of adolescence produces (cf. *Haley v Ohio,* 332 US 596).

The United States Supreme 'Court, on more than one occasion, has emphasized that special care must be taken to insure the rights of minors who are exposed to the criminal justice system (*Matter of Gault,* 387 US 1; *Haley v Ohio, supra;* cf. *Fare v Michael C.,* 442 US 707, *supra*). This court and others in the State have shared this view (*People v Bevilacqua, supra; People v Townsend, supra; Matter of Michelet P.,* 70 AD2d 68; *Matter of Brian P. T.,* 58 AD2d 868; *Matter of William L.,* 29 AD2d 182).

For example, in *Matter of Michelet P. (supra),* the 15-year-old accused, who resided with the murder victim, made certain inculpatory oral admissions to the police before submitting to a polygraph test. In suppressing the youth's statement, we held that the fact that no person existed who was legally responsible for him did not obviate his need for a guardian under subdivision (a) of section 724 of the Family Court Act and, by making the adult son of the murder victim the guardian for the accused youth, the police had not fulfilled the requirements of that statute.

We realize that *Matter of Michelet P. (supra)* and similar cases (e.g., *Matter of Brian P. T., supra; Matter of William L., supra*) concerned proceedings in the Family Court, and the application of the notification provision of subdivision (a) of section 724 of the Family Court Act, while this case involves a proceeding in a criminal court. But there is a somewhat analogous notification provision in the Criminal Procedure Law applicable in criminal proceedings when a juvenile is arrested (CPL 140.27, subd 5). In our view, since the two statutes cover situations of a similar nature, the protections judicially engrafted upon the Family Court Act should also apply to similar cases brought in criminal courts (cf. *People v Bevilacqua,* 45 NY2d 508, *supra*).

As in *Matter of Michelet P.* (70 AD2d 68, 71, *supra*) "[t]he emotional and intellectual immaturity of [the] juvenile" in this case "creates an obvious need for the advice of a guardian and counsel at an interrogation". It is self-evident that the statement made by Clark as to the abandonment by the defendant's mother and that he would see "that it will be handled fairly", would have exactly the

consequence it did, namely the obtaining of an incriminating statement (cf. *People v Bay,* 76 AD2d 592, *supra*). Such a statement made by a defendant while in police custody is not admissible as it is the result of inducement, provocation, or encouragement, no matter how subtly employed (cf. *People v Rogers,* 48 NY2d 167, 174; *People v Maerling,* 46 NY2d 289).

Nor was the admission of defendant's statement harmless error. The eyewitness testimony was far from overwhelming. According to the 13-year-old victim, his attacker wore a hood, it was a dark night, and he only had a quick glimpse of the attacker when he looked backwards at him for about five seconds. We have little doubt that defendant's statement weighed most heavily with the jury (*People v Schaeffer,* 56 NY2d 448; *People v Donovan,* 13 NY2d 148, 153). As then Judge FULD stated: "It cannot be overemphasized that our legal system is concerned as much with the integrity of the judicial process as with the issue of guilt or innocence. The constitutional and statutory safeguards provided for one accused of crime are to be applied in all cases. The worst criminal, the most culpable individual, is as much entitled to the benefit of a rule of law as the most blameless member of society. To disregard violation of the rule because there is proof in the record to persuade us of a defendant's guilt would but lead to erosion of the rule and endanger the rights of even those who are innocent" (*People v Donovan, supra,* pp 153-154).

■ We also note that the trial court erred in permitting the prosecutor, over objection, to elicit testimony from the victim's brother and the arresting officer that the victim had identified the defendant as the attacker (*People v Trowbridge,* 305 NY 471; *People v Ross,* 79 AD2d 666; *People v Napoletano,* 58 AD2d 83) as well as in permitting testimony relating to an admission made by defendant to the effect that he had previously engaged in consensual homosexual acts (*People v Chandler,* 65 AD2d 920, 921; cf. *People v Smalls,* 94 AD2d 777; *People v Blanchard,* 83 AD2d 905, app dsmd 56 NY2d 648). We trust that these errors will not be repeated at the new trial we are directing.

For the reasons stated, the judgment of conviction appealed should be reversed, on the law and the facts, the motion to suppress granted, and a new trial ordered.

DAMIANI, J. P., LAZER and BOYERS, JJ., concur.

Judgment reversed, on the law and the facts, motion to suppress granted, and new trial ordered.