In the Matter of STANLEY C., a Person Alleged to be a Juvenile Delinquent.

Fourth Department, April 4, 1986

**APPEARANCES OF COUNSEL**

*Charles R. Valenza, County Attorney (Kenneth R. Fisher* of counsel), for appellant.

*Charles O. Baisch, Law Guardian,* for respondent.

**OPINION OF THE COURT**

Denman, J.

In this juvenile delinquency proceeding, the County of Monroe appeals from an order of Monroe County Family Court (120 Misc 2d 18) which granted respondent's motion to suppress his oral and written statements to a Division for Youth (DFY) counselor and a Monroe County Deputy Sheriff. The statements were given in response to questioning of respondent Stanley C. upon his voluntary return to the State School at Industry after going AWOL. The delinquency petition is based on respondent's admission to certain acts committed by him after absconding from the facility which, if committed by an adult, would constitute the crimes of burglary in the second degree and grand larceny in the third degree.

Stanley C., born January 8, 1967, had been committed to Industry pursuant to a juvenile delinquency determination when, on December 3, 1982, he absconded. While AWOL he

broke into a residence and stole cigarettes, liquor, jewelry, cash and clothing worth $1,200. Subsequently, he stole a Jeep and later abandoned it after removing a shotgun, shells and an army coat from the vehicle. He met some friends, set out to hitchhike to Florida, changed his mind, and hitchhiked to Buffalo. He stayed with friends in Buffalo and Batavia until December 29, 1982 when he decided to return to Industry. He telephoned his counselor, David Pankratz, who met him at the bus station in Rochester and returned to Industry with him in a school van. Pankratz, who is not a peace officer and does not carry a weapon, did not give respondent the *Miranda* (384 US 436) warnings and did not handcuff him. On the return trip, Pankratz and respondent discussed respondent's activities while he was AWOL and his motive for turning himself in. Pankratz informed respondent that he would have to take a statement from him, a standard procedure regarding a runaway. Upon returning to the facility, Pankratz interviewed respondent in a room approved for questioning a juvenile. Pankratz did not give respondent *Miranda* warnings and did not call his parents, who live in Schenectady. He did not promise respondent confidentiality, nor did respondent ask for it. After taking respondent's signed statement, Pankratz informed the facility's security arm of its contents.

Subsequently, Deputy Sheriff Joseph Bender, who was investigating the burglary and theft, questioned respondent and took a signed statement from him in the presence of a DFY aide, George Allen. This questioning also took place in an approved conference room at the facility. Neither Allen nor Bender called respondent's parents prior to the questioning. Bender advised respondent of his *Miranda* rights and the purpose of the conversation. Respondent indicated that he understood his rights. According to Bender and Allen, neither made any promises or threats to respondent. Bender told respondent only that he would not be removed from the facility that evening and that Bender himself had no authority to transfer him to jail or to the Children's Detention Center. Respondent first testified that Bender "guaranteed" him that he would not be removed from the facility if he told the Deputy "what went on," but subsequently testified that he asked Bender if he would be arrested based on the statements, that Bender made no promises in this regard, and that respondent in fact was not arrested following his statement. According to the Deputy, the atmosphere during the questioning was very casual and respondent "readily" agreed to speak with

him. Respondent was eventually transferred to a secure facility pursuant to regulations governing the return of AWOL juvenile delinquents.

In suppressing the statement made to the DFY counselor, Family Court held that the counselor was required to give respondent *Miranda* warnings before questioning him. We disagree. *Miranda* warnings are required to be given only in the context of custodial interrogation "[b]y a public servant engaged in law enforcement activity or by a person then acting under his direction or in cooperation with him" (CPL 60.45 [2] [b] [ii]; *see, Minnesota v Murphy,* 465 US 420, 430; *Miranda v Arizona,* 384 US 436, 444). We conclude that respondent was not subjected to custodial interrogation by one engaged in law enforcement activity.

The determination as to whether one is in custody for *Miranda* purposes depends on whether he has been formally arrested or has had his freedom restricted to the degree associated with formal arrest *(see, Minnesota v Murphy, supra,* p 430; *Oregon v Mathiason,* 429 US 492, 495). The test is whether a reasonable person, innocent of any crime, would have believed that he was in custody *(see, People v Yukl,* 25 NY2d 585, 589, *cert denied* 400 US 851). Respondent certainly was not free to leave the facility; nevertheless, this restriction on his freedom was not due to the interrogation, but to the prior order of commitment. At the time of his statements to Pankratz, respondent had not been arrested by officials charged with the duty of apprehending criminals, but had voluntarily surrendered to the counselor *(cf. People v Ronald W.,* 24 NY2d 732, 735). The counselor is not a police officer or peace officer, is not engaged in law enforcement activity, does not carry a gun, and has no authority to arrest or lay criminal charges *(see,* Family Ct Act § 305.2 [1], [4] [b]; [7]; CPL 60.45 [2] [b] [ii]). Rather, the counselor is a person primarily concerned with the "education and rehabilitation" of his charge *(cf. People v Ronald W., supra,* p 734). The counselor conducted his questioning in an informal, nonthreatening setting which was familiar to the respondent and which had none of the earmarks of custodial coercion *(see, Minnesota v Murphy, supra,* p 430; *People v Ronald W., supra,* p 734). The questioning itself was not conducted in an effort to elicit incriminating responses to be used in a criminal prosecution, but constituted routine inquiries aimed at discovering the whereabouts and activities of the juvenile during his absence and determining his suitability for continued placement in the facility *(see,* 9

NYCRR 181.10, 181.14). There is no indication that the counselor had been made aware of the burglary and larceny by police or that he was acting at their behest in questioning respondent. On the contrary, it is clear that the counselor was required by DFY regulations to conduct the inquiry and in fact did so for in-house purposes only, to determine if respondent was appropriate for transfer to a more secure facility *(see,* 9 NYCRR 181.10, 181.14). On these facts, we conclude that the counselor was not required to give respondent *Miranda* warnings before questioning him. Analogously, the courts have held that *Miranda* warnings need not be given to probationers by probation authorities prior to routine questioning even though, technically, the probationer is required to appear for the interview and answer questions truthfully *(see, Minnesota v Murphy, supra; People v Ronald W., supra).* The Court of Appeals has reached this conclusion notwithstanding its assumption that the probationer would be restrained from leaving the room where he is being questioned *(People v Ronald W., supra,* p 734).

Family Court also erred in suppressing the statement to the Deputy Sheriff. First, Family Court held the statement to the Deputy Sheriff to be inadmissible, even though preceded by *Miranda* warnings, because "tainted" by the prior unwarned statement to the counselor. Both the Supreme Court and the Court of Appeals have held that the doctrine of taint is inapplicable to *Miranda* warnings and that statements made by individuals after receiving *Miranda* warnings are admissible notwithstanding that the individual may have made prior unwarned statements *(Oregon v Elstad,* 470 US 298, —, 105 S Ct 1285, 1292-1294; *People v Witherspoon,* 66 NY2d 973).

Second, Family Court found that respondent did not make a knowing and intelligent waiver of his *Miranda* rights before speaking with the Deputy Sheriff. That finding is unsupported by the record. The uncontroverted evidence is that the Deputy read respondent his *Miranda* rights and explained the purpose of the questioning and that respondent indicated he understood his rights before "readily" answering the Deputy's questions. Respondent was questioned in a familiar surrounding in a room which was an approved setting for the questioning of juveniles. According to the testimony the atmosphere was casual and nonthreatening. Respondent did not indicate that he desired to remain silent and did not request that a lawyer or his parents be present. While there was no testimony concerning respondent's capacity to understand his

rights, respondent was a 15 year old of apparently normal intelligence who had previous experience with the juvenile justice system. Viewing the totality of the circumstances, we conclude that respondent made a knowing, voluntary and intelligent waiver of his rights *(Fare v Michael C.,* 442 US 707, 725, 728; *People v Dunbar,* 71 AD2d 805-806; *Matter of Kenneth C.,* 125 Misc 2d 227, 233-236; *Matter of Albert R.,* 121 Misc 2d 636, 638-639).

We reject the claim that the statement was induced by a promise. The statement relied upon by respondent as constituting a promise was the Deputy's "guarantee" that respondent would not be taken out of the institution if he spoke with the Deputy. Respondent himself testified that he asked the Deputy if he would be arrested, that no promises were made in this regard, and that in fact he was not arrested after giving his statement. The Deputy testified that he made no promises to respondent but merely told him that he would not be removed from Industry that evening and that the Deputy had no authority to transfer him to jail or to a more secure juvenile facility. That was not a promise of leniency, but a routine statement of fact which did not create a substantial risk that defendant might falsely incriminate himself *(see,* CPL 60.45 [2] [b] [i]; *People v Yerdon,* 51 AD2d 875, 876).

Finally, we reject the claim that the statement was rendered inadmissible by the Deputy's failure to notify respondent's parents. Former Family Court Act § 724 (a) (now Family Ct Act § 305.2) provided: "If a peace officer or a police officer takes into custody under section seven hundred twenty-one or if a person is delivered to him under section seven hundred twenty-three, the officer shall immediately notify the parent or other person legally responsible for his care, or the person with whom he is domiciled, that he has been taken into custody." The statute clearly gives the police the option to notify, instead of the parents, the person legally responsible for the juvenile's care or the person with whom he is domiciled.* Such notification was unnecessary in this case because the respondent was questioned while in the custody of officials of the facility to which he had been committed by court order *(see, Matter of Penn,* 92 Misc 2d 1043, 1044). DFY officials, the persons legally responsible for respondent's care, were aware of the questioning and were present throughout. In view of

---

* Family Court Act § 305.2 (3) gives police the option to notify the person with whom the child "resides".

the fact that he was in the custody of DFY, it is doubtful that respondent was taken "into custody" by or "delivered to" the Deputy, the contingencies which trigger the duty to notify. Even if the Deputy was required to notify the parents, we cannot conclude that the failure to notify per se requires that the statement be suppressed. The recodification of the statute indicates that parental notification and presence are merely factors to be considered in the determination of the reasonableness of police in questioning a juvenile *(see,* Family Ct Act § 305.2 [8]; *see also, Matter of Kenneth C.,* 125 Misc 2d 227, 236, *supra; cf. People v Susan H.,* 124 Misc 2d 341, 346, 349).

Accordingly, the order suppressing the statements should be reversed and the matter remitted to Family Court for further proceedings in accordance with this opinion.

DILLON, P. J., BOOMER, PINE and SCHNEPP, JJ., concur.

Order unanimously reversed, on the law and facts, without costs, and matter remitted to Monroe County Family Court for further proceedings, in accordance with the opinion by DENMAN, J.