■ The People of the State of New York, Respondent, v David K. Ventiquattro, Appellant.—Judgment unanimously reversed on the law, defendant's motion granted, and new trial granted, in accordance with the following memorandum: Defendant, a 15-year-old boy, was convicted, following a jury trial, of murder in the second degree (Penal Law § 125.25 [2];

under circumstances evincing a depraved indifference to human life) for shooting his 11-year-old companion in the back of the head with a shotgun while the two boys were playing in defendant's bedroom on the evening of November 12, 1985. On this appeal, defendant seeks review of the determination denying his motion to suppress his oral and written statements to the police. Defendant also contends that the proof at trial was legally insufficient to convict him of depraved indifference murder and that the conviction was against the weight of the evidence.

Following the shooting, defendant was interviewed by several investigators from the State Police and, over the course of the ensuing eight hours, gave a number of statements containing varying accounts of how the shooting occurred. When first questioned by police, defendant claimed that he did not know what happened. Later, he told the police that the victim shot himself. Still later, when interrogated at the station house, defendant claimed that he accidentally shot the victim while handling the shotgun. After defendant made this admission, police advised him of his *Miranda* rights and thereafter obtained a written statement from him incorporating those rights. In defendant's final statement, he stated that he was playing the game Dungeons and Dragons and that he shot the victim while fantasizing that his friend was evil and that it was his job to exterminate evil. Following a pretrial *Huntley* hearing, the court concluded that defendant's oral and written statements were voluntary and were not obtained in violation of defendant's statutory or constitutional rights. The statements were admitted in evidence at defendant's trial and he was convicted as charged.

At the outset, we note that the proof at trial was legally sufficient to support defendant's conviction of depraved indifference murder under Penal Law § 125.25 (2). Defendant's conduct in handling a loaded shotgun in the bedroom of his home while playing with a companion satisfies the requirement that he acted recklessly, i.e., that he was aware of and consciously disregarded a substantial and unjustifiable risk (Penal Law § 15.05 [3]; *see, People v Gomez,* 65 NY2d 9, 11). In addition, the defendant's conduct in pointing the gun at his companion and pulling the trigger evidences a wanton indifference to human life sufficient to satisfy the depraved indifference element of the statute *(see, People v Register,* 60 NY2d 270, 274, *cert denied* 466 US 953). The risks posed by defendant's conduct in this case and his callous indifference to them

entitled the jury to conclude that he was guilty of murder *(see, People v Gomez, supra).*

Defendant's conviction must be reversed and a new trial granted, however, because we conclude that the hearing court erred in denying defendant's motion to suppress his oral and written statements to the police. It is well established that "special care must be taken to insure the rights of minors who are exposed to the criminal justice system" *(People v Ward,* 95 AD2d 351, 354; *see, In re Gault,* 387 US 1; *Haley v Ohio,* 332 US 596). Thus, "[i]t is well recognized that over and beyond the ordinary constitutional safeguards provided for adults subjected to questioning, the police must exercise greater care to insure that the rights of youthful suspects are vigilantly observed" *(People v Hall,* 125 AD2d 698, 701; *see also, Matter of John C.,* 130 AD2d 246, 254). Both the Family Court Act and the Criminal Procedure Law contain provisions which require that, when a minor has been arrested, the police immediately notify a parent or other legally responsible person of the arrest and the place of detention (Family Ct Act § 305.2 [3], [4]; CPL 120.90 [7]; 140.20 [6]). Moreover, Family Court Act § 305.2 provides that a youth charged with juvenile delinquency cannot be questioned unless he and a person required to be notified pursuant to the statute have been properly advised of the child's rights. The hearing court found that the questioning of defendant did not violate his rights under the Constitution and the statute because it was noncustodial, investigatory and essentially exculpatory. On our review of the record, we find that the police questioning in this case violated defendant's statutory and constitutional rights, and that defendant's statements to the police should have been suppressed.

The determination whether one is in custody at the time of police questioning and therefore entitled to an advisement of his rights for purposes of the Family Court Act depends upon whether he has been formally arrested or has had his freedom restricted to the degree associated with formal arrest *(Matter of Stanley C.,* 116 AD2d 209, 212, *appeal dismissed* 70 NY2d 667). The test, of course, is not what the defendant thought, but rather what a reasonable person, innocent of any crime, would have thought had he been in defendant's position *(see, People v Yukl,* 25 NY2d 585, 589, *cert denied* 400 US 851; *People v Hall, supra,* at 700).

Although it is clear that the police did not formally arrest defendant until sometime between 5:30 A.M. and 6:00 A.M. on November 13, 1985, the record of the suppression hearing

reveals significant limitations upon defendant's freedom of movement to the degree associated with formal arrest. Defendant was initially questioned for 30 minutes in the presence of three officers in a police vehicle outside his home. At the time, defendant was upset, crying, and splattered with blood on his hands, face and clothing. Significantly, when, during the course of being questioned in the police car, defendant asked to be allowed to use the bathroom, he was given permission to do so, but was accompanied by two officers who physically accompanied him inside the bathroom and instructed defendant not to wash his hands. Police conceded that the reason for this demand was their desire to conduct a gunshot residue test on defendant's hands. Defendant was then questioned in the bathroom by these officers for an additional period of approximately one-half hour at which time he told them that the victim had shot himself. This explanation was clearly incredible in view of the fact that the victim was shot in the back of the head. At this point, the police decided to transport defendant to the station house to conduct the gunshot residue test and to question him further.

When they arrived at the police station, defendant was photographed, the gunshot residue test was administered and defendant was taken to a juvenile interview room for questioning. Defendant's aunt, however, who had accompanied him to the police station, was not permitted to accompany defendant into the interview room. When defendant's parents arrived at approximately midnight, they likewise were not allowed to be present in the interview room while defendant was being questioned. Instead, the police came out and talked to them on several occasions. Although it is undisputed that defendant's parents asked whether they needed a lawyer, the officer told them that it was their decision, and also advised them that he believed the shooting was accidental and that defendant would be going home soon. In the meantime, police continued to question defendant. Defendant's parents did not speak with their son until after the police had completed taking a written statement. It was not until after defendant had admitted accidentally shooting the victim that the police first advised him of his *Miranda* rights. The police then took a formal written statement. Thereafter, when the police learned of discrepancies between defendant's written statement and the evidence at the scene of the shooting, they reinterviewed defendant while his parents were again not permitted in the interview room. In addition, police asked defendant's mother to get him some clean clothes because they were going to retain the bloodstained clothing defendant was wearing.

Thus, although defendant was not formally placed under arrest until 5:30 A.M. on November 13, 1985, the record reveals that this juvenile suspect was continuously questioned by a number of police officers for a period of over eight hours. It is quite apparent that the police, armed with certain inconsistencies in his story, sought to isolate defendant to obtain a confession to the crime. Courts have repeatedly held that the law will not tolerate police conduct aimed at isolating a youthful suspect from his family or other supportive adults (see, People v Hall, supra, at 701; People v Cavagnaro, 88 AD2d 938; People v Harrell, 87 AD2d 21, affd 59 NY2d 620). We conclude that the police overstepped the bounds of permissible conduct in isolating this youthful suspect from his family and therefore all his oral and written statements to the police must be suppressed.

Defendant's testimony before the Grand Jury, made after he had consulted with counsel and had executed a waiver of immunity was clearly attenuated from the initial illegality and was properly received in evidence at defendant's trial (People v Benson, 114 AD2d 506, lv denied 67 NY2d 649). However, in our view, this conclusion does not in any way render harmless the hearing court's denial of defendant's motion to suppress. (Appeal from judgment of Jefferson County Court, Aylward, J.—murder, second degree.) Present— Callahan, J. P., Denman, Green, Pine and Davis, JJ.