In the Matter of CANDY M., a Person Alleged to be a Juvenile Delinquent, Respondent.

Family Court, Ulster County, January 10, 1989

### APPEARANCES OF COUNSEL

*Francis Murray, County Attorney (Andrew J. Gilday* of counsel), for petitioner. *George A. Beck, Law Guardian.*

### OPINION OF THE COURT

KAREN K. PETERS, J.

A *Huntley* hearing was held before this court on October 4, 1988, concerning the admissibility of a statement signed by the 13-year-old respondent, who is alleged to be a juvenile delinquent, being charged with an act, if committed by an adult, that would constitute the crime of criminal mischief in the fourth degree, as defined in section 145.00 of the Penal Law of the State of New York.

Candy M. resides at St. Cabrini School, in West Park, New York. She was placed there by the Dutchess County Department of Social Services pursuant to an order of the Dutchess

County Family Court. It is alleged that she and three other juveniles were AWOL on campus and damaged a 1984 Ford station wagon owned by the St. Cabrini School.

There is no issue of police coercion since a stipulation was placed on the record that no threats or promises were made to the respondent.

The central issue raised by respondent's motion to suppress the statement herein is whether compliance with Family Court Act § 305.2 is possible when the parent, or as here, the guardian, is also the complainant. Proceedings in relation to a charge of juvenile delinquency, "resulting as they do in a loss of personal freedom, are at the very least quasi-criminal in nature." *(Matter of Gregory W.,* 19 NY2d 55, 62; *see also, In re Gault,* 387 US 1; *In re Whittington,* 391 US 341.) Consequently, the respondent in such a proceeding must be fully protected against involuntary self-incrimination. If a statement of confession is to be used against him or her, there must be full compliance with due process requirements. Criminal justice must afford immeasurably more assurance of strict application of its language than adhered to in civil and other proceedings. *(See, Matter of Aaron D.,* 30 AD2d 183, 184.) Moreover, both the New York Family Court Act and the Criminal Procedure Law "mandate that the police take more care to safeguard the rights of potentially bewildered and ignorant youths than may be required when they question adults." *(See, People v Susan H.,* 124 Misc 2d 341, 345 [1984].)

As stated in his 1984 Supplementary Practice Commentaries, appearing under section 305.2 of the Family Court Act (McKinney's Cons Laws of NY, Book 29A, 1989 Pocket Part, at 53), Douglas J. Besharov concludes: "Subdivision 305.2 (8) repeats the phraseology of Family Court Act § 724 (d) (1983), so that the 'presence or absence' of parents is to be one of the factors considered in determining whether a child's statement is admissible. This much litigated provision has resulted in an abundance of often inconsistent caselaw—as courts have alternatively moved toward and away from a *per se* rule requiring the parents' presence. [For a comprehensive summary of this caselaw, *see People v. Castro,* 118 Misc.2d 868, 462 N.Y.S. 2d 369, 373-379 (Sup. Ct., Crim.Term, Queens Co., 1983).] A straightforward restatement of the two-pronged rule that has emerged is found in *Matter of Albert R.,* 121 Misc.2d 636, 468 N.Y.S.2d 825, 826, (Fam. Ct., Queens Co., 1983). First, 'a respondent cannot be questioned by the police unless there is a showing of reasonable efforts to notify the parent or guard-

ian.' Failure to show reasonable efforts renders the statement inadmissible. Second, if reasonable efforts have been made and the parent is not present, then: 'The presence or absence of a parent at the time of questioning is not in itself determinative on the issue; it is merely one factor which the court must consider.' "

We have found several decisions of interest:

In *Matter of Stanley C.* (116 AD2d 209 [1986]), the Fourth Department ruled that the statement was not rendered inadmissible by the Deputy's failure to notify respondent's parents, since Family Court Act § 305.2 gives the police the option to notify, instead of the parents, the person legally responsible for the juvenile's care. Under normal circumstances, this court agrees with the ruling in *Matter of Stanley C.*, however, in our case, where the arresting officer is aware that the guardian is also the complainant, reasonable efforts should have been made to ascertain the identity of the parent(s) and to thereafter attempt notification.

In 1986, Kings County Family Court Judge Carolyn E. Demarest suppressed statements as involuntarily made during custodial interrogation in violation of the respondent's constitutional rights since she found, based upon expert testimony, that the average, reasonable, innocent 10 year old would not have believed that he had any alternative to remaining in the room and answering the questions of the police. *(See, Matter of Chad L.,* 131 Misc 2d 965.) Judge Demarest adopted the principles in *People v Ward* (95 AD2d 351 [2d Dept 1983]), wherein it was recognized that "the reasonable perceptions of a child must be judged by a standard which takes into account the emotional and intellectual immaturity of a juvenile. Hence, in evaluating the totality of the circumstances surrounding the interrogation of a juvenile to determine whether such interrogation must be deemed 'custodial', the age of the juvenile must be considered a major factor" *(supra,* 131 Misc 2d, at 967).

Also of interest is *People v Barnes* (124 AD2d 973), a 1986 unanimous Fourth Department memorandum decision, wherein the court reaffirmed that the voluntariness of the statement in most instances is a question of fact, to be determined on the totality of circumstances *(see, Matter of Stanley C., supra).* In *Barnes,* the waiver of rights obtained from the defendant's guardian may have been tainted by the guardian's motivation to advance his personal interests since

he was also a participant in the underlying larceny. However, the court found that this did not disqualify the guardian or require a suppression of the confession. The court reasoned, "Only if it were shown that the police used this information in a coercive manner to obtain the guardian's cooperation need the statement be suppressed upon the ground of improper police conduct."

Our case is distinguishable from the *Barnes* decision *(supra)* in that the guardian's interests here are completely and inherently adverse to the respondent's. While it was stipulated that there was no police coercion of the respondent, the record supports an inherent alliance between the police and the school administrator who consented to the interrogation of the respondent. At the hearing, Mr. Larry Lathin, the campus supervisor for St. Cabrini School, testified that on the date in question, he called the police and escorted Trooper Martinez up to the cottages where respondent resided. At that point, he told Trooper Martinez he wanted to file charges and immediately gave the Trooper permission to question respondent. The record is void of any testimony that any discussion took place with the respondent as to identification and notification of her parents.

This court disagrees with the reasoning in *People v Susan H. (supra)*. However it is unnecessary to refuse to follow the court's ruling since the facts are easily distinguishable from this case. In *Susan H. (supra)* 15-year-old Susan was charged with arson, attempted murder of her parents and murder of a neighbor's child who was trapped in the burning house. She moved to suppress oral, written and videotaped confessions made at the police precinct in her father's presence shortly after the fire. Defendant unsuccessfully argued that her father's status as an intended victim required that a special guardian be appointed for her before the police questioned her.

The court ruled that the police properly discharged their duty by notifying the father and awaiting his arrival before questioning Susan. In our case, it is not a loving (although "dejected and weary") parent who gave consent, but an institutional guardian. Presumably a person with less of an emotional investment and long-term commitment than that of a parent. The emotional and intellectual immaturity of a juvenile creates an obvious need for the advice of a *loyal* guardian and counsel at an interrogation from which charges of juve-

nile delinquency may ensue. *(See, Matter of William L.,* 29 AD2d 182, 184 [emphasis added].)

In *Matter of Michelet P.* (70 AD2d 68), statements made by the 15-year-old respondent were suppressed because the police and District Attorney's office failed to comply with the provisions of Family Court Act § 724. Section 724 of the Family Court Act is applicable in cases of persons in need of supervision and is virtually identical to Family Court Act § 305.2 in cases of juvenile delinquency. Respondent, Michelet P., of Haitian origin had no known relatives in the United States, and had been residing with the victim of a homicide. The law enforcement authorities attempted to comply with the Family Court Act by asking the son of the victim to act as guardian for the respondent. Thereafter, in the presence of this *"ad hoc"* guardian, the respondent admitted commission of the crime. The court held that had the police followed the dictates of section 724 they would have taken respondent to the Family Court.

In addition to the obvious conflict of interest in our case, there was no evidence submitted that any of the other options available under Family Court Act § 305.2 were contemplated by the arresting officer or administrators at St. Cabrini. At pages 6 and 7 of the record, Trooper Martinez was asked:

"Q: Was there any discussion that took place between you and anyone else concerning the child's parents?

"A: Not at all; not that I know of.

"Q: Was there any discussion that took place between you and anyone else concerning whose custody Candy M. was in at that time?

"A: No."

Thus, applying the principles delineated in the above cases, the court finds, as a matter of law, that an agency or other institutional guardian, when also the complainant, has an inherent conflict of interest, and therefore cannot serve within the meaning of section 305.2 of the Family Court Act in connection with the questioning of the child. The police should forthwith and with all reasonable speed take the child directly to the Family Court to have a guardian appointed. The court grants respondent's motion to suppress the statement made by the respondent.