Matter of Ronald Y.Z. (2005 NY Slip Op 52181(U))

[*1]

Matter of Ronald Y.Z.

2005 NY Slip Op 52181(U) [10 Misc 3d 1067(A)]

Decided on November 14, 2005

Family Court, Chemung County

Brockway, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 14, 2005

Family Court, Chemung County
In the Matter of Ronald Y.Z., a Person Alleged to be a Juvenile Delinquent, Respondent.
D-02419-05

David M. Brockway, J.
By petition filed with this Court on August 22, 2005 respondent was charged with acts which, if committed by an adult, would constitute the offense of Burglary in the Third Degree, as defined by Section 140.20 of the New York State Penal Law, a class D Felony. In sum, the petition alleges that on or about June 11, 2004 the respondent entered and remained unlawfully in Parley Coburn School with the intent to commit a crime therein. During the course of an investigation by the Elmira Police Department, a written statement was obtained from the respondent. The respondent now moves to suppress said statement pursuant to Family Ct. Act §305.2. A hearing was held on October 17, 2005. The Court makes the following findings of fact and conclusions of law based on the evidence presented.

FINDINGS OF FACT
The Chemung County Department of Social Services (hereinafter the "Department"), presented the testimony of two investigating officers - Michael Canali and Gerald Tucker. Inv. Canali (hereinafter "Canali") testified that he had been assigned to investigate a burglary at the Parley Coburn School. During the course of the investigation, Canali had been made aware, after speaking with a number of youths, that the respondent may have been present during the criminal activity. After gathering the aforementioned information, Canali called the respondent's home on June 16, 2005. He spoke to his mother, Ms. Z., setting up an interview for the following morning at 7:30AM. At the agreed upon time, the respondent and his mother arrived at the Elmira Police Department Detective Bureau. Canali testified that they were brought into Inv. Tucker's office, which is a designated juvenile interview room. (see, Family Ct. Act § 724[ii]).
Inv. Tucker (hereinafter "Tucker") testified that he read the respondent his Miranda warnings out loud to both the respondent and his mother, from his standard-issue Miranda warning card. Tucker further stated that after each right, he stopped and asked the respondent if he understood what had just been read to him. Importantly, Tucker testified that after reading each right listed in his Miranda warnings card that he paraphrased the warnings in simplified terms, so that the respondent could understand them. According to Tucker, after each right, the respondent affirmatively indicated that he understood the right just given. Ms. Z. was also asked if she understood each right. She also [*2]indicated that she understood the rights being read. Finally, at the conclusion of reading the respondent his rights, Ms. Z. then asked the respondent if he understood what had just been explained to him. Again, the respondent indicated that he did. Both the respondent and Ms. Z. stated that the respondent would speak to the investigators.
Tucker further testified that after going through the aforementioned procedure he had both the respondent and Ms. Z. sign a photocopy of the Miranda warning card that had just been read. Both investigators indicated that neither the respondent nor Ms. Z. asked them to stop their questioning; nor had either asked for an attorney at any point. Nor did respondent so request, at any point during the interview.
Tucker testified that after apprising the respondent of his rights as delineated above, Ms. Z. indicated that she needed to leave to go to work, and that the investigators could continue to speak with her son in her absence. According to both investigators, before Ms. Z. left, she advised them that the respondent had a field trip that morning and asked if the investigators could provide transportation for the respondent following their interview; they indicated to her that they could.
Both investigators testified that after Ms. Z. left, they continued to question the respondent about his involvement in the burglary at the school. The investigators testified that the respondent initially, and for approximately 30 minutes thereafter, denied any involvement in the criminal activity. However, after being confronted with a photograph of a shoe print taken from the scene that apparently matched the shoes the respondent was wearing during the interview, he indicated that he had, indeed, been present during the burglary, and began to speak to the investigators about his involvement.
Tucker also testified that after conversing with the respondent, a written statement was typed. After typing and printing the respondent's statement, Tucker read the statement out loud to the respondent, and asked him if he wanted to make any changes to his statement. According to Tucker the respondent made no changes. Tucker also testified that he then had the respondent read his statement out loud, which the respondent did. He was again asked if he wanted to make any changes. Finally, the respondent signed his written statement.

CONCLUSIONS OF LAW
At a Huntley hearing, the Department has the burden of proving, beyond a reasonable doubt, that the statement was voluntarily made. People v. Huntley, supra; People v. Witherspoon, 66 NY2d (1985). If the statement was made during a custodial interrogation, the Department has the burden of showing that the respondent knowingly, voluntarily and intelligently waived his or her constitutional rights under Miranda. The purpose of the Miranda rule is to counteract the coercive pressure of the custodial setting; therefore, those rights apply only to custodial interrogations. People v. Deary, 212 AD2d 960 (4th Dept. 1975); Matter of Darryl T., 210 AD2d 120 (1st Dept. 1994). In New York, the voluntariness of a statement is a question of fact to be determined from the totality of the circumstances. Matter of Stanley C., 116 AD2d 209 (4th Dept. 1986); (see generally, Matter of Robert O., 109 Misc 2d 238 [Fam. Ct., Kings Co., 1981]).
The standard used to determine if a person is in custody is whether a reasonable person, in the respondent's position, innocent of any crime, would have believed that his freedom had been restricted in any way. People v. Acaule, 25 NY2d 585 cert. denied 400 US 851 (1970). Factors to consider in determining whether an individual is in custody include, but are not limited to, the amount of time spent with the police, whether his or her freedom was restricted, the location and [*3]atmosphere under which the questioning took place, whether Miranda warnings were given, and whether the questioning was investigatory or accusatory in nature. (see, People v. Centavo, 76 NY2d 837 [1990]).
In this case, the respondent was brought to the police station by his mother, read his Miranda warnings with his mother present, and then questioned by the investigators. Tucker testified that his office was designated for the questioning of juveniles and was casual and nonthreatening. Both investigators testified that the respondent was never handcuffed or restricted in any way. He had access to a bathroom, which was directly across the hall from Tucker's office. Moreover, both investigators indicated that they did not raise their voices, or threaten or coerce the respondent in any way. All of the aforementioned factors would seem to negate a finding of custody by the Court. However, the Court notes that Canali specifically indicated at the hearing that the authorities had been given the name of the respondent by another juvenile who was at the scene of the burglary - essentially a co-respondent. Also, the investigators confronted the respondent with a photograph of a shoe print during the interview, which they obviously felt tied him to the crime scene. Given these facts, it is clear that the questioning of the respondent was not merely investigatory in nature, but accusatory.
Interrogation has been defined as "express questioning . . . [or] words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 US 291 (1980). Based on the accusatory nature of the questioning put to the respondent, as well as the fact that the respondent is but an eight year old juvenile in the presence of two seasoned police investigators, the Court finds that he was in custody for the purposes of Miranda. Having so determined, the Court now turns to the issue of whether there was a knowing, intelligent and voluntary waiver by the respondent of his constitutional rights.
Courts have rejected a per se rule that juveniles are incapable of understanding the standard Miranda warnings and a waiver thereof. (see, Matter of Julian B., 125 AD2d 666 [2nd Dept. 1986]); People v. Smith, 217 AD2d 221 [4th Dept. 1995]). The Court in Julian B., dealt with a seven year old respondent who had confessed to the murder of a two-year-old victim, stating:
"[w]e do not suggest in any way that a child of seven years of age or similar tender age, is incapable per se of understanding or waiving his rights. Rather, the age, intellectual capacity, time of day and manner of questioning are all factors to be taken into account in determining if a statement is voluntary under the totality of the circumstances." Matter of Julian B., 125 AD2d at 671.
Moreover, as the Family Court Act mandates, and as courts have held, another factor to consider is the presence or absence of the child's parent(s) during the advisement of Miranda warnings and any waiver of the same. (see, Family Ct. Act §305.2[7], [8]). The Court notes the somewhat unique factual scenario in the case at bar, where the respondent's mother was present for the reading and waiver of the respondent's Miranda rights, but then left to go to work. The Court finds that, after listening to and evaluating the testimony at the Huntley hearing, Ms. Z.'s decision to leave the police station was wholly her own, and was not brought on by any action by the authorities in any way. She clearly had the option of staying with the respondent, leaving with him, or arranging to have someone stay with him if she so desired. Moreover, as Ms. Z. stated during her testimony, she left after the Miranda warnings were given to her and the respondent. Additionally, Tucker pointed out that Ms. Z. gave the investigators permission to continue to question the [*4]respondent in her absence. Thus, it seems clear to the Court[FN1] that Ms. Z. knew what the intentions of the investigators were at the time she left the station: to question the respondent regarding his involvement in a burglary at the Parley Coburn School. As noted above, the absence of a parent is but one of several factors for the Court to consider in the assessing the voluntariness of the respondent's waiver. (see, Family Ct. Act §305.2(8); People v. Bonaparte, 130 AD2d 673 [2nd Dept 1987]).
In the final analysis, the Court is presented with a respondent who was eight years of age at the time of the police contact noted above, and while the Court has considered his young age, this one factor is not dispositive. Tucker testified that the respondent appeared to be a child of normal intelligence, that he was able to read and write, that he understood the questions asked of him and that he responded to those questions in an appropriate manner. The interview with the investigators lasted approximately one hour. The Court finds this relatively brief interview was reasonable and appropriate given the nature of the investigation. In this regard, the procedure described above in which Tucker reviewed the respondent's Miranda warnings with him and his mother was sufficient to apprise them of the respondent's rights and the consequences of waiving the same. Viewed as a whole, the Court is convinced that the respondent made a knowing, intelligent and voluntary waiver of his rights. In short, under the totality of the circumstances present in this case, the Court finds that neither the respondent's statutory or constitutional rights were violated in the taking of the statement at issue and, further, that the Department met its burden of proof. Accordingly, it is herebyORDERED that the respondent's motion to suppress his written statement is denied; and it is further
ORDERED that a pre-trial conference is hereby scheduled for November 22, 2005 at 2:30 PM; and it is further;
ORDERED the case shall be scheduled to return to Court for further proceedings on December 8, 2005 at 10:00 AM.
Dated: November 14, 2005ENTER:
 __________________________
 Family Court Judge

Footnotes

Footnote 1:Notwithstanding Ms. Z.'s protestations at hearing that she would not have permitted any questioning had she known her son would have been confronted with shoe print evidence.