OPINION OF THE COURT
David M. Brockway, J.
Before the court is the law guardian’s suppression motion which raises an issue apparently unreported to date: is a victim-guardian, who is estranged from his suspect-ward and who had earlier expelled the ward from the home, an appropriate person to whom notice of the juvenile’s police custody should be given? For the reasons below, the court answers that query in the negative.
On August 2, 2006 the Chemung County Attorney’s Office (hereinafter presentment agency) filed a petition pursuant to article 3 of the Family Court Act, alleging respondent Lance BB to be a juvenile delinquent. The petition alleges that between January 28, 2006 and January 29, 2006, respondent knowingly entered and unlawfully remained in the residence of respondent’s grandfather (hereafter Smith), and did steal 27 sport jerseys valued at $1,645. Such acts, if committed by an adult, would constitute the crimes of burglary in the second degree as defined by section 140.25 (2) of the Penal Law and grand larceny in the fourth degree as defined by Penal Law § 155.30 (1).
Following a Huntley hearing,[1] Law Guardian Andrew Roth-stein, Esq., seeks to suppress certain statements of respondent elicited by Investigator Michael Canali of the Elmira Police Department (hereinafter EPD) during his interrogation of the respondent on or about February 15, 2006. Respondent argues that the statements were taken contrary to federal and state constitutional rights and the extension and codification of those safeguards in the Family Court Act.
Facts
Based upon the credible testimony, the court makes the following findings of fact. Prior to the alleged burglary and larceny, Smith had ordered respondent to leave his home for an undisclosed reason. On February 15, 2006, Elmira Free Academy *361 (EFA) school resource officer (SRO) David Holmes of the EPD contacted Canali. Holmes informed Canali that respondent, age 14 at the time, was at the school wearing an athletic jersey matching the description of one of the jerseys previously reported as stolen by Smith. Canali thereupon requested Holmes to transport respondent to the EPD for the purpose of questioning respondent. Holmes did so. Canali was aware of respondent’s ejection from Smith’s home. He was also aware at the time that respondent was living with his older sister. Nevertheless, Canali contacted Smith and informed him of the impending interview and requested that Smith be present as the respondent’s legal guardian.[2] Smith declined to be present and gave his permission to Canali to interview respondent in his absence. Canali did not attempt to contact respondent’s sister. Upon the respondent’s arrival at the police department, Canali, in plain clothes, took respondent into his nine-foot-by-nine-foot office, which is a designated juvenile interviewing room.[3] Canali advised respondent of his Miranda[4] rights, which respondent ostensibly waived. Canali then proceeded to interrogate respondent for approximately an hour. Respondent made self-incriminating statements, both oral and written, surrounding his involvement in the commission of the alleged acts of burglary and theft. The court takes judicial notice that February 15, 2006 was not a court holiday.
Law
It is basic that the admissibility of statements to an officer is dependent upon a number of factors. Those include the voluntariness of those statements, whether they are custodial in nature, whether they are taken in compliance with certain constitutional and statutory rights and whether, if waived, they are so waived knowingly, voluntarily and intelligently.[5] These rights and procedures are codified for juveniles in the Family Court Act.[6]
Family Court Act § 305.2 (3) requires that when an “officer”[7] takes a child into custody, he shall immediately so notify the *362 parent or person legally responsible for the child’s care or, if the person legally responsible is not available, the person with whom the child resides. The purpose of having a parent or other “person legally responsible” present during a custodial interrogation is twofold: (1) to help the juvenile respondent understand his or her Miranda rights; and, if the Miranda rights are waived, (2) to help monitor the interrogation process. (See Matter of Omar L., 192 Misc 2d 519, 524 [Fam Ct, Kings County 2002].) Additionally, the designated adult may provide support and guidance for the juvenile in the above processes. (Matter of James OO., 234 AD2d 822 [3d Dept 1996], lv denied 89 NY2d 812 [1997].)
Further, Family Court Act § 305.2 (7) prohibits the questioning of a juvenile in custody unless the respondent and the person required to be notified under subdivision (3), if present, are advised: (a) of the juvenile’s right to remain silent; (b) that statements made by the child may be used in a court of law; (c) that the child has a right to have an attorney present at such questioning; and (d) that the child has a right to have an attorney provided for him without charge if he is indigent. Finally, Family Court Act § 305.2 (8) provides that “[i]n determining the suitability of questioning and determining the reasonable period of time for questioning such a child, the child’s age, the presence or absence of his parents or other persons legally responsible for his care and notification pursuant to subdivision three shall be included among relevant considerations.” The People bear the burden of proving, beyond a reasonable doubt, compliance with these procedures and of the voluntariness of any statements. (People v Anderson, 42 NY2d 35 [1977].)
Discussion
The court turns first to whether Canali’s interview of this 14-year-old respondent is deemed a “custodial” interrogation as contemplated by Family Court Act § 305.2 and Miranda. Honorable Karen K. Peters, when then sitting as Family Court Judge in Ulster County, correctly noted that in determining such an issue, “the reasonable perceptions of a child must be judged by a standard which takes into account the emotional and intellectual immaturity of a juvenile.” (Matter of Candy M., 142 Misc 2d 718, 720 [Fam Ct, Ulster County 1989], citing other cases.) Additionally, it is well settled that in determining this issue, the court must evaluate the totality of the circumstances. Here, this court finds from the credible evidence and from its *363 consideration of all of the “relevant considerations” that the respondent would reasonably have perceived himself to be in custody, as that term has been interpreted by Miranda and its progeny. These circumstances included respondent’s removal from the school setting by an officer, his transportation by the SRO to the police department (with no other way home or to school), his not having an affirmative opportunity to consult with an adult, and, as discussed below, his not having any real, independent parent or parent-substitute to intercede or with whom to confide or help evaluate his rights. Moreover, Canali clearly must have thought him in custody as well, as it was he who felt it appropriate and necessary to notify respondent’s guardian pursuant to section 305.2 (3) of the Family Court Act.
The court next examines whether compliance with Family Court Act § 305.2 is possible when an estranged legal custodian is also the complainant. Although the potential conflict of the grandfather is not solely determinative of the admissibility of the respondent’s statement, it is certainly a strong factor the court must consider under the totality of circumstances. (See Matter of James OO. at 823, citing People v Barnes, 124 AD2d 973 [1986], lv denied 69 NY2d 743 [1987]; Matter of Stanley C., 116 AD2d 209 [4th Dept 1986], appeal dismissed 70 NY2d 667 [1987].)
In examining the attendant circumstances, it is utterly apparent to this court that the grandfather has (and at the time in question, had) interests totally and inherently averse to those of the respondent. The instant facts are easily distinguishable from James 00. and Omar L. (where, in each case, the mother of both the victim and of the respondent consented to questioning but showed love and concern for the welfare of both children) and People v Susan H. (124 Misc 2d 341 [Sup Ct, Bronx County 1984] [where the father, unaware that he had been an intended victim of his daughter and had conducted himself as a loving parent, consented to the police speaking to his daughter]). Unlike those cases, we have here a legal guardian who is clearly an estranged grandparent who had essentially kicked the respondent out of his home earlier and who has since distanced himself from respondent and these proceedings. The grandfather could hardly be characterized as a “loving” or “supportive” caretaker at the time of questioning. As Professors Merril Sobie and Douglas Besharov in their commentaries write, “By requiring notice to a ‘parent or other person legally responsible for [a] child’s care’ that a child has been taken into *364 custody, section 305.2 implicitly assumes that the adult notified will act in the juvenile’s interest.” (Besharov and Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 305.2, at 68.) That assumption is manifestly impossible to make here.
Respondent further argues that due to Smith’s dual role as both legal guardian and alleged victim, law enforcement should have sought an alternative custodian who could have offered objective advice and guidance to the respondent. The court agrees. Since respondent was residing with his sister at the time of questioning, some attempt should also have been made to contact her under the circumstances.[8]
Conclusion
Taken as a whole, then, the respondent was deprived of the contemplated protections of the Family Court Act. These included, of course, his right to the independent parental support and guidance necessary to make an informed decision regarding the waiver of his rights to counsel and against self-incrimination. Under the facts presented, the grandfather’s inherent conflict of interest precluded his serving as the designated person contemplated under section 305.2 of the Family Court Act. The police should have, therefore, either located and notified the sister, or failing that (or, having done so and finding her inappropriate for this purpose), forthwith and with all reasonable speed taken the child to the Family Court to there have a guardian appointed. (See Matter of Candy M. at 722.)
To quote Besharov and Sobie, “The message to law enforcement seems clear enough, although it apparently bears repeating: If a juvenile’s parent or other responsible adult cannot be reached, or if it appears that their interests will be inconsistent with the juvenile’s, questioning must be conducted in accordance with subdivision 305.2(4)(b).”[9] (Besharov and Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 305.2, at 69.)
Moreover, and independently, given the child’s age and the circumstances noted above, this court also concludes that he did *365 not possess the requisite maturity, guidance or wherewithal to make an informed waiver of his Miranda rights, particularly without the presence of a nonconflicted, “loving parent” described above. (People v Susan H., 124 Misc 2d 341 [1984].)
The presentment agency has not met its burden of showing beyond a reasonable doubt that the respondent’s statements were made in compliance with the Family Court Act or after a knowing, voluntary and intelligent waiver of his rights thereunder.
Accordingly, it is hereby ordered that the motion to suppress the respondent’s oral and written statements is granted.

. (People v Huntley, 15 NY2d 72 [1965]). It is worthy of note that the grandfather did not accompany the respondent for the hearing or at other court appearances after the summoned initial appearance of the respondent.

. See Family Ct Act § 305.2 (3).

. See Family Ct Act § 305.2 (4) (b); 22 NYCRR 205.20.

. Miranda v Arizona, 384 US 436 (1966).

. (See generally, e.g. Miranda v Arizona, 384 US 436 [1966]). Rights afforded adult defendants are generally made applicable to juveniles pursuant to In re Gault (387 US 1 [1967]).

. Family Ct Act § 305.2.

. “Officer” is defined by Family Ct Act § 305.2 (1) as a peace officer or police officer.

. Given the apparent age of his sister from court observation, it is interesting whether she, either, would have been an appropriate “parental advisor” envisioned and prescribed by the Family Court Act.

. Section 305.2 (4) (b) provides for the taking of the child “forthwith and with all reasonable speed ... to the family court.”